W. E. GUILD, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. A. MILLER, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. M. FINKBINE, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. T. SHEPHERD, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

G. W. THOMAS, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ESTATE OF K. E. JEWETT, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

AUGUSTA FINKBINE, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ADDIE H. FINKBINE, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

EMELIE B. STAPP, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARIE G. STAPP, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROBERT H. FINKBINE, PETITIONER, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

E. C. FINKBINE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

DOROTHY FINKBINE SAUERS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FLORENCE S. FINKBINE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. O. FINKBINE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MRS. K. E. JEWETT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

R. G. BERRY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6020, 8120, 18117, 18130, 18134, 18171–18180, 18182, 18227, 19661, 27021.

Promulgated May 28, 1930.

*J. G. Korner, Jr., Esq.,* and *C. B. Stiver, Esq.,* for the petitioners.
*J. E. Marshall, Esq.,* and *M. Parshall, Esq.,* for the respondent.

1188

1190

OPINION.

TRUSSELL: The only issue here presented is the character of certain distributions made to these petitioners during the taxable years in question, as stockholders of the Finkbine Lumber Co., petitioners contending that such distributions were made by the corporation in the course of liquidation, and under the Revenue Acts of 1918 and 1921 must be considered as a return of capital, and the total in each case being less than the March 1, 1913, value or the cost of the stock, no portion represented taxable gain. Respondent contends that the Finkbine Lumber Co. was not in liquidation during these years, or the payments were not made in liquidating that corporation, and that they represented normal corporate dividends and were income to petitioners subject to surtax.

In so far as the distributions here in question made in the calendar years 1921 and 1922 are concerned, little discussion is necessary, as the liability of such distributions to surtax is covered by the provisions of the Revenue Act of 1921, which includes " dividends " in income subject to such tax, and provides:

SEC. 201. (a) That the term " dividend " when used in this title (except in paragraph (10) of subdivision (a) of section 234 and paragraph (4) of subdivision (a) of section 245) means any distribution made by a corporation to its shareholders or members, whether in cash or in other property, out of its earnings or profits accumulated since February 28, 1913, except a distribution made by a personal service corporation out of earnings or profits accumulated since December 31, 1917, and prior to January 1, 1922.

(b) For the purposes of this Act every distribution is made out of earnings or profits, and from the most recently accumulated earnings or profits, to the extent of such earnings or profits accumulated since February 28, 1913; but any earnings or profits accumulated or increase in value of property accrued prior to March 1, 1913, may be distributed exempt from the tax, after the earnings and profits accumulated since February 28, 1913, have been distributed. * * *

In *Frank D. Darrow*, 8 B. T. A. 276, we held that dividends as defined in section 201 above quoted, include distributions in liquidation to the extent of earnings or profits accumulated since February 28, 1913, such earnings when distributed in liquidation being subject to the surtax and exempt from normal tax. See also *Philetus W. Gates*, 9 B. T. A. 1133, and *Eric A. Pearson et al.*, 16 B. T. A. 1405.

In the present case it is shown that the distributions made from March 1, 1913, through the taxable years here involved were in each case less than the earnings on hand accumulated since that date, and on authority of the decisions cited, those made in 1921 and 1922 represent income to the distributees subject to surtax even if the petitioners are correct in their contention that they were made in liquidation of the corporation.

As to the distributions made to these petitioners in 1919 and 1920, a different situation exists. The taxability of these distributions is to be determined under the Revenue Act of 1918, the provisions of which, in respect to taxable income represented by corporate distributions differ from those of the later act above quoted by including in section 201 (c) the provision that:

> Amounts distributed in the liquidation of a corporation shall be treated as payments in exchange for stock or shares, and any gain or profit realized thereby shall be taxed to the distributee as other gains or profits.

It follows that the distributions in question made to these petitioners in 1919 and 1920, if in fact made in effecting the liquidation of the corporation, in the sense in which that term is used in the section quoted, they must be considered as a return of capital to the extent of the undistributed March 1, 1913, value of the stock, or cost thereof if acquired subsequent to that date. There is no dispute as to the March 1, 1913, value of the stock or the cost of those shares subsequently acquired and, it being shown that the total distributions in the case of each petitioner are less than these cost bases, and no part of the several amounts distributed represents taxable income, if the petitioners are correct in their contention as to the character of the distributions.

Petitioners contend that the corporation was in process of liquidation at all times and continuously from January, 1915; that the stockholders by proper resolution at that time voted for liquidation and dissolution and authorized the directors then elected to carry out this direction, and that following this all of the activities of the corporation had as their primary object the turning of the corporate assets into money, the payments of corporate debts and the distribution of any remaining balance among the stockholders and the dissolution of the corporation. In support of their contention petitioners point out that following this resolution by the stockholders the corporation acquired no more timber properties except such as were necessary to economically develop and carry on the logging, manufacture and disposal of the timber owned by it on that date. They insist that under existing conditions liquidation of the assets of the corporation to the best advantage could only be accomplished by operation, as there was a market for the manufactured product, but a sale could have been

effected of the timber holdings, if at all, only at a sacrifice of a large part of their real value. They insist that no act is shown on the part of the corporation which is inconsistent with a program of liquidation in process of being carried out.

It is respondent's contention that whether or not the stockholders of the corporation resolved on liquidation and intended that the corporation be liquidated, the fact as to whether or not it actually went into liquidation immediately following that resolution and occupied such status during the taxable years in question here, and whether the distributions in question were actually made in effecting such liquidation, is to be determined from its activities subsequent to the adopting of the resolution, considered in the light of conditions existing during the period of such activities, and considering the circumstances under which the distributions in question were made and what they, in fact, represented. In support of his contention that the corporation was not in liquidation during the period in which these distributions were made, respondent points out that following the adoption of this resolution, and as a result of it, the activities of the corporation in the purposes for which organized, instead of showing a decrease indicating a winding up or cessation of business, were enormously increased; timber which the corporation had up to that time not intended to manufacture but to sell *en bloc* was added to its logging area, more than one million dollars was borrowed and expended for increased facilities for operation and a program was definitely entered upon which meant necessarily more than ten years of future operation of larger volume and more intensive character than the corporation had ever before been engaged in during the time when it was admittedly a going concern not engaged in winding up its business. Respondent insists that the corporation was not from that time forward, and during the years here in question, engaged in liquidating the business, as the contrary must be presumed from the fact that it was operating actively and prosperously in doing all those things for which it was created and was doing nothing which indicated liquidation, but on the other hand many of its activities were inconsistent with those of a corporation in process of being wound up and dissolved, among these being its organization in 1925 of a subsidiary corporation engaged in transportation and endorsing the latter's obligations falling due in the future as late as 1935, the renewal of its charter by the stockholders upon its expiration in 1921, its guarantee of a line of credit of $500,000 extended by a Chicago bank to another corporation organized by certain of its stockholders, and its advance of $40,000 to one of its directors to use in exploration for oil upon adjacent property not belonging to it, with the understanding that it be repaid only in the event that oil in paying quantities was found.

Petitioners' counsel in their brief contend that, this being an Iowa corporation, the decisions of the Supreme Court of that State are binding upon us in determining whether the corporation was in liquidation during the taxable years 1919 to 1922, inclusive, in the sense in which that term is used in section 201 (c) of the Revenue Act of 1918. With this we do not agree. The decision of that question involves the construing of no statute of that State, it being shown that not until long after the period here in question did the directors proceed for the dissolution of the corporation in accordance with the Iowa statute and initiate the process of winding up of the corporation provided for thereby.

Section 721, Revised Statutes provides:

The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply.

The word "laws" as used in this section, to quote the language of the court in *Swift* v. *Tyson*, 16 Pet. 1, refers to:

* * * The positive statutes of the state and the construction thereof adopted by the local tribunals, and to rights and titles to things having a permanent locality, such as the rights and titles to real estate, and other matters immovable and intra-territorial in their nature and character.

This rule has been recognized and applied repeatedly. *Kuhn* v. *Fairmont Coal Co.*, 215 U. S. 349; *Black & White Taxicab Co.* v. *Brown & Yellow Taxicab Co.*, 276 U. S. 518.

In the present case, however, the question to be determined is not the construction of a state statute, but is in fact a question of the meaning to attach to the words "amounts distributed in liquidation of a corporation" as used in a Federal statute. We are not to ascertain what the courts of Iowa have determined as a status of liquidation, but what that status was as Congress viewed it in using that term in the taxing act. In resolving this question we are not bound by either state laws or the construction placed thereon by state courts, as is illustrated in *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110, where it was held that a business organization might be a partnership under a state law and yet be considered for purposes of taxation as an association under the Revenue Acts of the United States. Compare also *Weiss* v. *Wiener*, 279 U. S. 333.

The word "liquidation" when applied to a partnership or company has a general meaning, well recognized by textwriters and courts, as the operation of winding up of its affairs by realizing its assets, paying its debts and appropriating the amount of profit or loss. 37 Corpus Juris 1265; *Assets Realization Co.* v. *Howard*, 127 N. Y. S. 798; *Gibson* v. *American Rwy. Express Co.*, 195 Iowa 1126; 193 N. W. 274; *Rohr* v. *Stanton Trust & Savings Bank*, 76 Mont. 248; 245 Pac.

947; *Gilna* v. *Barker*, 78 Mont. 357; 254 Pac. 174; *Lafayette Trust Co.* v. *Beggs*, 213 N. Y. 280; 107 N. E. 644; *In Re Union Bank of Brooklyn*, 161 N. Y. S. 29.

We have been able to find no case in which the question submitted for decision by the court was the status of a corporation during a period of years following a resolution by its stockholders authorizing liquidation, and during which it was actively engaged in normal operation, doing those things for which it was created, deriving a profit and making distributions only of such profits to its stockholders. The cases cited by counsel in which the courts have held corporations to be in liquidation are ones in which there have been definite and affirmative acts consistent only with liquidation and in themselves necessarily effecting a winding up and cessation of the corporate business, such as actual cessation of corporate activities, a sale of all corporate assets and business, or legal dissolution. These decisions are not in point.

Although the particular question here involved does not appear to have been passed upon, the courts have recognized that a status of liquidation exists only where the activities of the corporation are for the purpose of winding up the affairs of the company. In *Assets Realization Co.* v. *Howard, supra,* cited by petitioners, the court said:

" The very meaning of the word ' liquidation ' implies the winding up of the affairs of the company," and the status of liquidation appears by the decisions to be recognized as the opposite of or at least as distinguished from that of a " going concern." So in *Hellmich* v. *Hellman*, 276 U. S. 233, in discussing section 201 (a) and (c) of the Revenue Act of 1918, here involved, the court held that Treasury Regulations 45 (articles 1541 and 1548) " correctly interpreted the Act as making section 201 (a) applicable to a distribution made by a *going corporation* to its stockholders in the ordinary course of business and section 201 (c) applicable to a distribution made to stockholders *in liquidation.*" The court, in discussing Regulations 45, uses the following language:

Treasury Regulations 45, which were promulgated under the Act, stated on the one hand, in Art. 1541, that for the purpose of the statute " dividends " comprise distributions made by a corporation to its stockholders " in the ordinary course of business, even though extraordinary in amount; " and, on the other hand, in Art. 1548, that: " So-called liquidation or dissolution dividends are not dividends within the meaning of the statute, and amounts so distributed, whether or not including any surplus earned since February 28, 1913, are to be regarded as payments for the stock of the dissolved corporation. Any excess so received over the cost of his stock to the stockholder, or over its fair market value as of March 1, 1913, if acquired prior thereto, is a taxable profit. A distribution in liquidation of the assets and business of a corporation, which is a return to the stockholder of the value of his stock upon a surrender of his interest in the corporation, is distinguishable from *a dividend paid by a*

*going corporation out of current earnings or accumulated surplus* when declared by the directors in their discretion, which is in the nature of a *recurrent return upon the* stock." These Regulations, with a change made in 1921 as to the second sentence of Art. 1548, are still in effect so far as distributions in liquidation under the Act are concerned.

It appears to us that the question here presented is whether the corporation, following the resolution of January, 1915, continued its business through the taxable years in question as a going concern and the distributions in question were made from current earnings or accumulated surplus from such operations or whether upon the passage of that resolution it ceased to be a going concern and its activities had as their object not the purposes for which the corporation was organized but merely the object of winding up its business by converting its assets, paying its debts and distributing any remaining balance to its stockholders. This question we must determine from a consideration of the acts of the corporation throughout the years in question.

Questions of taxation *must be determined* by viewing *what was actually done,* rather than the *declared purpose of the participants;* and when applying the provisions of the Sixteenth Amendment and income laws enacted thereunder we must regard *matters of substance* and not mere form. *Weiss* v. *Stearn,* 265 U. S. 242, 254.

We can not presume liquidation to be in process merely because a resolution of the stockholders authorized the directors to take such action. Liquidation is not a technical status which can be assumed or discarded at will by a corporation by the adoption of a resolution by its stockholders, but an existing condition brought about by affirmative action, the normal and necessary result of which is the winding up of the corporate business.

The resolution of the stockholders of January, 1915, authorized the directors elected at that meeting to liquidate the corporation " as soon as it could be done economically " and we must judge by what was subsequently done whether such action was taken prior to the taxable years here involved and, if so, whether the distributions in question were incidents of such action.

On this question the record shows that in passing this resolution the stockholders knew and had agreed upon a program of active future operation. Prior to that time the operations in progress were the logging and manufacture of the timber from a tract of less than 197,000,000 feet at Wiggins, which operation with the facilities then owned would occupy some 10 years. In addition to this the corporation owned at D'Lo, Miss., 100 miles away, a large undeveloped tract of approximately 573,000,000 feet of timber which its plans of operation did not contemplate that the corporation would ever log and manufacture. This tract had been purchased as a speculation, it

being intended to sell it at a profit. The program of operation agreed upon for the corporation by the stockholders, at the meeting of January, 1915, changed the plans of the corporation in respect to this D'Lo tract, it being agreed to add it to the area which the corporation would log and manufacture, thus increasing from approximately 197,000,000 to nearly 800,000,000 feet the timber contemplated to be logged, manufactured and disposed of by active and diligent operation. In authorizing this action it was clearly understood that the corporate activities would be greatly expanded and would necessarily be carried on actively in increased volume for more than 10 years, and that large sums would have to be borrowed to secure facilities for the increased operation, and additional tracts of timber would have to be purchased to consolidate present holdings. The record further shows that these things contemplated in January, 1915, to be done in respect to expansion of activities, were done; that the corporation borrowed and expended in the year 1916 more than a million dollars for a modern plant at D'Lo, and entered upon the most active period of operations in its entire history. These operations were profitable and were continued to a time subsequent to the taxable years here in question. During this period the corporation purchased additional tracts of timber, in consolidating its two large tracts for operation, amounting in all to 178,832,377 feet and for which it paid $1,342,622.19, the logging and manufacture of which was done as a part of the active operations which followed the resolution of January, 1915.

In respect to petitioners' contention that it was necessary to manufacture its timber in order to realize its value and the realization of such value was a necessary incident of liquidation and therefore such operation can not be considered as inconsistent with a status of liquidation, it may be said that such operation is also consistent with a going concern, the generally accepted definition of which is "some enterprise which is being carried on as a whole, and with some particular object in view." *Oliver* v. *Lansing*, 59 Nebr. 219; 80 N. W. 829. When we consider merely the fact that these operations, carried on in the usual and normal way, in addition to realizing the value of the corporate assets, returned large profits for each year, the picture presented is wholly consistent with the attaining of the object for which the corporation was created, even though it might be said to be not inconsistent with a program of liquidation. But when we consider further that the individuals elected as directors in 1915 did not take over and administer the assets of the corporation in the usual and customary manner of a liquidating committee, but the corporation continued to function following that time as in the past, with its stockholders participating in its general scheme of management,

holding their regular annual meetings and electing each year a new board of directors, which elected officers and actively carried on and directed the corporate activities, the picture presented is, in our opinion, one of a going concern.

Considering these things alone it would be difficult to conclude that during this period the corporation was engaged in liquidation—in winding up its affars, even though its stockholders might have agreed upon a program which contemplated liquidation and dissolution. When, however, we consider that the directors during this period not only took no steps toward dissolution, although under section 8392 of the Iowa Code the corporation in that event would have been continued with authority to do all things necessary to wind up its business, but on the other hand actually renewed the corporate charter for an additional period of 20 years; that the corporation's plans of operation necessarily included the acquisition of additional properties which it actually, during that period, purchased at a cost of approximately $1,343,000; that during this time, of more than 10 years of active, prosperous operation, its capital *was not only never impaired* by distributions to its stockholders, *but was consistently kept intact by the maintenance of the necessary reserves for that purpose*, we can not avoid the conclusion that the corporation was not in liquidation and the distributions in question were not distributions in liquidation in the sense in which that term is used in section 201 (c) of the Revenue Act of 1918. The distributions as made, considering the circumstances of the corporation, assuredly did not effect or tend to effect a winding up of the business. They were distributions which left the capital of the corporation unimpaired. They were made during a period of active operation from the net earnings of that period and there is nothing to indicate that they would not have been made even had there been no determination on the part of the stockholders or directors to liquidate the corporation. We can not hold them to be distributions in liquidation merely because they were so characterized in the resolution of the directors authorizing their payment. *Weiss* v. *Stearn, supra*. The fact that they represented the profits accruing from a liquidation of assets of the corporation does not stamp them as liquidating distributions. Nearly all profits of a manufacturing corporation are of such character, and especially corporations such as this, whose normal operations entail the depleting and exhausting of their timber, or in other words, the liquidating of such assets.

In *E. G. Perry*, 9 B. T. A. 796, we had for consideration a situation in some respects similar to the one here presented, it being there contended that accumulated profits distributed by a corporation to its stockholders after a determination to dissolve and liquidate, but which were distributed before such dissolution, were distributions

in liquidation under secton 201(c) of the Revenue Act of 1918. In this case, although the earnings in question were not accumulated subsequent to the determination to dissolve, and although the dissolution and actual winding up of the corporate business was effected immediately following the distribution in question and immediately following the date liqidation was determined upon, we held the distributions not to have been made in liquidation in contemplation of that section. In that case we said:

At the time the dividends were declared the corporation was not in dissolution and there was no retirement of the capital stock in whole or in part, nor was there any impairment of the capital of the corporation. The dividends were declared wholly from surplus and earnings. Even if it be conceded, as the respondent apparently contends, that the declaration of the dividend was in anticipation of the dissolution of the corporation and a step taken preliminary thereto, it is our opinion that the dividend would not fall within section 201(c) as made "in liquidation of a corporation."

A dividend in liquidation of a corporation implies that there has been either an impairment of its capital by a distribution thereof to its stockholders or a retirement of the capital stock in whole or in part. It will be noted that section 201(c) provides that liquidating dividends "shall be treated as payments in exchange for stock or shares." While by no means conclusive, the language is indicative of an intention to confine the use of the term to those distributions which affect the stock or shares of the corporation. The dividend here in question distributed profits only without in any way affecting the capital of the corporation. The corporation might or might not liquidate later, but in either event the dividend would remain as an indebtedness to the stockholders. We are of the opinion that whether or not there was an intention on June 30, 1919, to later dissolve the corporation, no liquidation took place on that day and that the character of the dividend then declared would not be changed by subsequently carrying out any intention to dissolve which might then have existed.

We can see in the resolution of January, 1915, no more than the adoption by the stockholders, for the corporation, of a general program of operation, with authority to the directors to wind up the affairs of the corporation and liquidate at such times as, in their judgment, that action could be taken economically, and we can see in the actions of the stockholders and directors and the activities of the corporation after 1915 and through the years here involved nothing more than the carrying out of that program of operation to the end that the affairs of the corporation might be so arranged that the liquidation authorized, if and when entered upon, could be economically effected.

We do not hold that any one of the individual and enumerated acts of the corporation, or conditions existing in the taxable years here in question, if considered alone, would be impossible to reconcile with a status of liquidation. Our conclusion is that, considering all of those acts of the corporation in the light of existing conditions as shown by the record of this proceeding, it can not be considered that

it was then engaged in liquidation, or that the distributions of earnings during those years were in liquidation in the sense in which that term is used in section 201(c) of the Revenue Act of 1918.

Reviewed by the Board.

*Judgment will be entered for the respondent.*