FRELMORT REALTY CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44714, 44955. Promulgated October 31, 1933.

*Morris L. Ernst, Esq., David J. Fox, Esq.*, and *Joseph J. Klein, Esq.*, for the petitioner.

*W. F. Gibbs, Esq.*, and *Frank M. Thompson, Esq.*, for the respondent.

OPINION.

ARUNDELL: The question of affiliation during 1924 and until Roeser and DeMallie surrendered their stock in 1925 requires but little discussion. Section 240(c) of both the Revenue Acts of 1924 and 1926 provides for affiliation " if one corporation owns at least 95 per centum of the voting stock of the other." Here the petitioner owned but 80 percent, which clearly does not bring it within the statute. It has been held that affiliation may exist where the holder of a minority interest of more than 5 percent is but the nominee of the parent and the parent company is in fact the " real owner " of all the stock. *Dome Co.*, 26 B.T.A. 967. That is not the situation here, for Roeser and DeMallie had a lively interest in the earnings of the subsidiary and held the stock as evidence of such interest. Consequently, they must be regarded as the " real owners " of their 20 percent stock interest. We are unable to follow petitioner's argument that the minority owners could not exercise the usual stockholders' rights of attending stockholders' meetings and voting. The record does not support such claim. It goes no further than to show that they did not do so; not that they could not. Some contention is made as to petitioner's legally enforceable control of the minority stock. Whatever force such claim may have had under the earlier statutes, it is entirely ineffective under the 1924 Act and later acts, which require " ownership and not control." *Morris Foundry Co.* v. *Commissioner*, 52 Fed. (2d) 839; affirming 18 B.T.A. 1055.

There is a difference of opinion between the parties as to when Roeser and DeMallie surrendered their stock, thereby vesting entire ownership in petitioner. Counsel for petitioner claims that this occurred coincident with the casting up of accounts between Brown-Rochester and Roeser and DeMallie on April 15, 1925, while respondent contends it was on May 25, 1925. Petitioner's contention is based on Roeser's testimony that the computation of profits was made as of April 15, and his affirmative reply to a question as to whether, as near as he could recall, he and DeMallie turned in their certificates " around April 15." In support of respondent's view there is the written stipulation of the parties filed at the hearing, reading as follows: " (9) Brown-Rochester, on May 25, 1925, acquired the shares of stock held by Roeser and DeMallie * * *." Thus the oral testimony is in conflict with the written stipulation and, under the terms of the stipulation limiting the evidence that

may be produced by either side to such as is "not inconsistent with the facts herein stipulated," we cannot accept the testimony as establishing the fact that the minority stock was turned in prior to May 25, 1925. We accordingly hold that the two corporations were not affiliated and hence could not properly file a consolidated return for either the year 1924 or for any period in 1925 prior to May 25 in that year.

As to the portion of 1925 after the corporations became affiliated, petitioner's view is that they were entitled to file a consolidated return for the period to June 2, when the merger became effective. The respondent's position is, first, that the companies were affiliated for only a part of one day, May 25, between the time the minority interests turned in their stock and the time Brown-Rochester turned its assets over to petitioner, and that no return could be filed for such period; second, that even though they were affiliated from May 25 to June 2, they did not elect to file a consolidated return for that period.

We have held above that there was no statutory affiliation prior to May 25, 1925. On that date they became affiliated. But, as respondent points out, on the same date Brown-Rochester transferred all its assets to petitioner in pursuance of the authority previously granted to Brown to "work out * * * a plan of reorganization." The stipulation in regard to the assignment of assets reads as follows:

(9) Brown-Rochester, on May 25, 1925, acquired the shares of stock held by Roeser and DeMallie, and assets equivalent to approximately 20% of its capital stock and surplus were given in payment therefor; after this transaction was consummated, Brown-Rochester turned over all of its remaining assets, with a fair market value of $770,686.37, to Frelmort. A list of the assets given to Roeser and DeMallie, and the items absorbed by Frelmort, respectively, is attached to this agreed statement of facts, made a part thereof, and marked "Exhibit C".

In view of the stipulation we fail to perceive upon what ground petitioner contends that the record contains nothing to show that the transfers and assignments were made on May 25, 1925. True the stipulation reads that "after this transaction" (the acquisition of the minority stock) the assets were turned over, but inasmuch as both statements are contained in the same sentence, and as the evidence does not establish any other date, a fair construction of the stipulation is that the one date given was intended to apply to both transactions.

However, we do not regard this as material to the decision of either of the issues. If it be held that the transfer took place on May 25, under the formal assignments, Brown-Rochester was thereafter no more than an empty shell, and whether or not it was included in a consolidated return could not affect petitioner's tax

liability. If, as argued by petitioner, Brown-Rochester was possessed of its assets until June 2, 1925, when the merger became effective, the companies would be entitled to file a consolidated return for the period May 25 to June 2, had they made a timely election to do so. This they failed to do and it can not be done now. We accordingly affirm the respondent in his audit for both years on the basis of separate returns.

The argument of petitioner on the question of liquidation is that Brown-Rochester's assets were acquired by reason of the merger of Brown-Rochester into petitioner under the statutes of New York, and that in a merger under those statutes there is no liquidation, but merely a coalescence of two corporations, the effect of which is to create a single identity out of two corporations, which for tax purposes are considered to be a single unit. The merger statutes of New York, in so far as material here, are set out in the margin.[1]

At the outset, as indicated above, we think there may be some question as to whether Brown-Rochester's assets were transferred on May 25, 1925, by private act, or on June 2, 1925, by reason of the statutory merger. But, passing this and accepting petitioner's view that the execution of assignments and transfers was merely to simplify matters and that the transfer took place by operation of law under the merger statute, we can not agree that the consequences thereof, for Federal tax purposes, are to be adjudged in the light of the state law. If, in fact, there was a liquidation, the tax is to be determined under the Federal statute and not by a statute of a state which for its own purposes may give the liquidation some other designation, or place in some peculiar status the merged corporation. This has often been decreed by the Supreme Court. See *Burnet* v. *Harmel*, 287 U.S. 103, where the Court refused to treat as income from a sale income which under the Federal taxing act is regarded as income from a lease even though the local law

---

[1] Section 85. MERGER. Any domestic corporation * * * authorized to do business in this state owning all the stock of any other domestic stock corporation organized for, or engaged in business similar or incidental to that of the possessor corporation * * * may file in the office of the Secretary of State a certificate of such ownership, in its name and under its corporate seal, signed by its president or a vice-president and its secretary or treasurer, and setting forth a copy of the resolution of its board of directors to merge such other corporation, and to assume all of its obligation, and the date of the adoption thereof. Thereupon all of the estate, property, rights, privileges and franchises of such other corporation, shall vest in and be held and enjoyed by such possessor corporation as fully and entirely and without change or diminution as the same were before held and enjoyed by such other corporation, and be managed and controlled by such possessor corporation, * * * in its name, but subject to all liabilities and obligations of such other corporation and the rights of all creditors thereof. * * *

2. The possessor corporation shall be deemed to have assumed all the liabilities and obligations of the merged corporation and shall be liable in the same manner as if it had itself incurred such liabilities and obligations.

definitely gave the transaction all the attributes of a sale. The opinion reads in part:

Here we are concerned only with the meaning and application of a statute enacted by Congress, in the exercise of its plenary power under the Constitution, to tax income. The exertion of that power is not subject to state control. It is the will of Congress which controls, and the expression of its will in legislation, in the absence of language evidencing a different purpose, is to be interpreted so as to give a uniform application to a nationwide scheme of taxation. See *Weiss* v. *Wiener*, 279 U.S. 333, 337, 49 S.Ct. 337, 73 L.Ed. 720; *Burk-Waggoner Oil Ass'n.* v. *Hopkins*, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183; — *United States* v. *Childs*, 266 U.S. 304, 309, 45 S.Ct. 110, 69 L.Ed. 299. State law may control only when the operation of the federal taxing act, by express language or necessary implication, makes its own operation dependent upon state law. [Cases] * * *

But section 208 neither says nor implies that the determination of "gain from the sale or exchange of capital assets" is to be controlled by state law. For the purpose of applying this section to the particular payments now under consideration, the act of Congress has its own criteria, irrespective of any particular characterization of the payments in the local law. See *Weiss* v. *Wiener*, *supra*, page 337 of 279 U.S., 49 S.Ct. 337, 73 L.Ed. 720. The state law creates legal interests, but the federal statute determines when and how they shall be taxed.

In *Burk-Waggoner Oil Assn.* v. *Hopkins*, 269 U.S. 110, it was held that Congress had power to tax associations as corporations despite the fact that under the local statute they were regarded as partnerships, the Court saying:

Neither the conception of unincorporated associations prevailing under the local law, nor the relation under that law of the association to its shareholders, nor their relation to each other and to outsiders, is of legal significance as bearing upon the power of Congress to determine how and at what rate the income of the joint enterprise shall be taxed.

In *W. E. Guild*, 19 B.T.A. 1186, there was a question of whether distributions were in liquidation of a corporation, and it was contended that we were bound by the decisions of the highest court of the state wherein the company was incorporated. We said:

In resolving this question we are not bound by either state laws or the construction placed thereon by state courts, as is illustrated in *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U.S. 110, where it was held that a business organization might be a partnership under a state law and yet be considered for purposes of taxation as an association under the Revenue Acts of the United States. Compare also *Weiss* v. *Wiener*, 279 U.S. 333.

We have here no question of passing of title which would be controlled by local law. *Group No. 1 Oil Corp.* v. *Bass*, 283 U.S. 279. We think it cannot be denied that title passes to the possessor corporation under the merger statute, which provides that upon the filing of the prescribed certificate all property, etc., of the merged corporation " shall vest in and be held and enjoyed " by the possessor as fully and without diminution as before held by the merged cor-

poration. Nor can it rightfully be said that in *Bowman Hotel Corp.*, 24 B.T.A. 1193, and *Oswego Falls Corp.*, 26 B.T.A. 60, recognition was given to the local statute to an extent which would make it controlling here. The questions there were procedural and the imposition of the Federal tax was not affected by application of the local law.

It is our conclusion on this phase of the case that we must determine whether the transfer of assets from Brown-Rochester to petitioner was in liquidation as that term is used in the Federal statute, rather than by the consequences flowing from what the local law denominates a merger. In *W. E. Guild, supra*, we said:

> The word "liquidation" when applied to a partnership or company has a general meaning, well recognized by text-writers and courts, as the operation of winding up its affairs by realizing its assets, paying its debts and appropriating the amount of profit or loss.

This is the definition applied by the courts of New York. See *Lafayette Trust Co.* v. *Beggs*, 213 N.Y. 280; 107 N.E. 644. See also *Holmby Corp.*, 28 B.T.A. 1091. We further said in the *Guild* case that:

> Liquidation is not a technical status which can be assumed or discharged at will by a corporation by the adoption of a resolution by its stockholders, but an existing condition brought about by affirmative action, the normal and necessary result of which is the winding up of the corporate business.

The *Guild* case presented the converse of the situation before us. There it was shown that at the time of adoption of a resolution to liquidate " as soon as it could be done economically " the stockholders had agreed upon a program of future active operation, and the corporation continued to function. We held that the distributions were not in liquidation. In the cases we have here, the evidence leaves no doubt that it was the intent of the parties interested in Brown-Rochester to wind up its business. It had been formed for a particular purpose—to hold title to certain real estate—and upon disposition of the property there was obviously no further need for the corporation to exist as a separate entity. Consequently those in control decided to liquidate it, and upon distribution of its assets to petitioner the liquidation was an accomplished fact. The fact that petitioner continued to hold the stock of Brown-Rochester and the latter has not been formally dissolved is no obstacle to the transfer being a distribution in liquidation. *Wilmington-Steamboat Co.* v. *Sturgess*, 52 Fed. (2d) 210; affd., 55 Fed. (2d) 836. Cf. *Rochester Ry. Co.* v. *Rochester*, 205 U.S. 236, holding that " a corporation without shareholders, without officers to manage its business, without property with which to do business, and without the right lawfully to do business, is dissolved by the operation of the law which brings this condition into existence."

It is well settled that the transfer, in liquidation, of a subsidiar⸱ assets to the parent may result in gain or loss to the parent. *h*⸱ *Natl. Bank*, 17 B.T.A. 615; affd., 57 Fed. (2d) 980; *Canal-Commercial Natl. Bank*, 22 B.T.A. 541; affd., 63 Fed. (2d) 619. We hold that petitioner acquired the assets of Brown-Rochester in liquidation, and the tax should be computed accordingly.

Reviewed by the Board.

*Decision will be entered under Rule 50.*