TECLA M. STRAUB, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FREDERICK HERTENSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

CAROLYN L. MOSER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

FREDA M. HERTENSTEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 55935–55938. Promulgated October 31, 1933.

*Earl W. Shinn, Esq.*, and *Warren W. Grimes, Esq.*, for the petitioners.

*Harold Allen, Esq.*, and *L. H. Rushbrook, Esq.*, for the respondent.

## OPINION.

STERNHAGEN: The petitioners assail the respondent's determination that the amounts received by them in 1928 were taxable as ordinary dividends as defined in section 115 (a), Revenue Act of 1928 [1] and contend, on the contrary, that they were distributions in liquidation within the provisions of subsection (c).[1] If they are held to be, as petitioners contend, distributions in liquidation, the respondent raises the subalternate issue whether they are nevertheless taxable as dividends by virtue of subsection (g).[1] If this contention fails, the fair market value of the petitioners' shares when received on the several dates shown in the findings must be determined for the purpose of establishing the basis for gain or loss as prescribed in section 113.

1. The evidence, in our opinion, establishes that the distribution of 1928 was made in partial liquidation of the corporation's capital stock. This is true notwithstanding the fact that the method was that of reducing the face value of each outstanding share and not that of reducing the number of outstanding shares. There is ample evidence that from 1924, when Moser and several of the experienced employees died, the business declined; that the stockholders were conscious of the decline and were directing the activities of the corporation toward winding up the business with a minimum loss; while the business continued in operation, its scope was steadily narrowed. That it was not immediately discontinued is not, as

---

[1] SEC. 115. DISTRIBUTIONS BY CORPORATIONS.

(a) *Definition of dividend.*—The term " dividend " when used in this title (except in section 203 (a) (4) and section 208 (c) (1), relating to insurance companies) means any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913.

\* \* \* \* \* \* \*

(c) *Distributions in liquidation.*—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. The gain or loss to the distributee resulting from such exchange shall be determined under section 111, but shall be recognized only to the extent provided in section 112. In the case of amounts distributed in partial liquidation (other than a distribution within the provisions of section 112 (h) of stock or securities in connection with a reorganization) the part of such distribution which is properly chargeable to capital account shall not be considered a distribution of earnings or profits within the meaning of subsection (b) of this section for the purpose of determining the taxability of subsequent distributions by the corporation.

\* \* \* \* \* \* \*

(g) *Redemption of stock.*—If a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed in redemption or cancellation of the stock, to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend. In the case of the cancellation or redemption of stock not issued as a stock dividend this subsection shall apply only if the cancellation or redemption is made after January 1, 1926.

respondent contends, necessarily an indication that liquidation was not taking place. *Gossett* v. *Commissioner*, 59 Fed. (2d) 365. It is entirely consistent with a purpose to liquidate that the corporation and its management should continue the operation of the business as long as there was a reasonable justification for their judgment that this was the wisest course. It is entirely compatible that the resolution of December 17, 1928, should correctly designate the distribution as a " liquidating dividend of 90 percent," and at the same time recite that the $360,000 was not necessary in the operation of the business, for it is apparent that such business operations as were sought to be protected were those involved in most successfully winding it up. It is true that the statute, providing for a difference in treatment of dividends, on the one hand, and liquidation distributions, as thus defined, on the other, is likely to create an opportunity for avoiding surtax by reason of the subtle distinctions in the language of the section. This, however, is no ground for refusing to apply the liquidation provisions when the evidence shows that such a distribution has taken place.

2. We are of opinion that the distribution was not " at such time and in such manner as to [be] * * * essentially equivalent to the distribution of a taxable dividend," as provided in subsection (g). This section has already been sufficiently expounded in other decisions of the Board. *Pearl B. Brown, Executrix*, 26 B.T.A. 901; *Robert R. Meyer*, 27 B.T.A. 44; *Annie Watts Hill*, 27 B.T.A. 73; *Henry B. Babson*, 27 B.T.A. 859; *Louis Rorimer*, 27 B.T.A. 871. We think the evidence shows that the distribution of 1928 had no relation to the stock dividend of 1922, but that it was related to a later purpose to liquidate and discontinue the business, and that it was not within the reach of subsection (g).

3. Both parties seek the recognition of widely divergent values for the Moser stock from the evidence of the history and prospects of the corporation upon each of the basic dates, and more particularly the evidence of earnings of the corporation. Both appear to entrust the valuation question to the selection of a mathematical formula for the capitalization of earnings. While this has often been said to be an unsatisfactory foundation for determining value, it must be recognized that with a close corporation such as this there may be little else available. At all events, it is necessary to make a determination of these values in accordance with the preponderance of evidence in the record. Giving all of the evidence full and careful consideration, we have reached the conclusions of value set forth in the findings.

*Judgment will be entered under Rule 50.*