WARD M. CANADAY, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58632. Promulgated November 15, 1933.

*George W. Ritter, Esq.,* and *Leo Dalton, C.P.A.,* for the petitioner.
*M. B. Leming, Esq.,* for the respondent.

OPINION.

MURDOCK: The Commissioner determined a deficiency of $63,061.16 for the year 1928. The petitioner assigns as error the action of the Commissioner in holding (1) that the distribution of stocks and securities received by the petitioner as a stockholder of the Dealers Finance Co., pursuant to a resolution of the board of directors of the latter corporation passed on December 26, 1928, declaring as a dividend its earned surplus, consisting of stocks and securities in excess of a sum equal to $125,000, the par value of its outstanding capital stock, constituted a liquidating dividend, and (2) that the sum of $25,000 received by the petitioner from the Dealers Finance Co. in cancellation of 5,000 shares of stock in the latter corporation theretofore issued to the petitioner as a stock dividend was a liquidating dividend instead of a taxable dividend within 'the meaning of section 115 (g) of the Revenue Act of 1928.

At the hearing the respondent made claim for an increased deficiency on the ground that he had failed to include $3,622.11 as a liquidating dividend to the petitioner on its Dealers Finance Co. stock, being $2,997.68 received as its pro rata part of certain reserve funds of the Dealers Finance Co. and $624.43 received as a refund of income taxes of the Dealers Finance Co. for 1928.

The parties filed a stipulation which included a great many exhibits. We think, and the parties seem to agree, that a full statement

of all of the facts and circumstances disclosed by the stipulation and the accompanying exhibits is not necessary to a decision of the case.

The petitioner is a Delaware corporation. All of its stock was owned by Ward M. Canaday and John N. Willys in equal proportions at all times material hereto. The petitioner owned all of the issued and outstanding Class A stock of the Dealers Finance Co. from May 1921 until and including the twenty-sixth day of December 1928. It originally subscribed and paid $100,000 for 20,000 shares of this Class A stock. On December 3, 1926, the Dealers Finance Co. declared a 25 percent stock dividend, as a result of which the petitioner received 5,000 additional shares of Class A stock, each of the par value of $5.

The Dealers Finance Co. was incorporated on February 19, 1925, under the laws of the State of Delaware. The business of the Dealers Finance Co. from the time it began operations, April 1, 1925, until February 29, 1928, consisted of financing retail time sales of automobiles manufactured by Willys-Overland Co. and sold by Willys-Overland Co. dealers, i.e., the purchase of notes secured by chattel mortgages or conditional sales contracts, or both, representing balances of the selling prices of automobiles manufactured by the Willys-Overland Co. and also of certain used automobiles sold by dealers of the Willys-Overland Co.

The Class B stock of the Dealers Finance Co. originally had a total par value of $34,000, but was increased to $42,500 on December 3, 1926, by a 25 percent stock dividend.

The Class B stockholders of the Dealers Finance Co. consisted solely of officers and directors of the Willys-Overland Co. and their wives, of officers of the United States Advertising Corporation, and of employees of these two corporations.

The directors of the Dealers Finance Co. during all times material hereto were also either directors of the Willys-Overland Co. or officers of the United States Advertising Corporation. The latter corporation acted as advertising agency for the former. The petitioner owned all of the common stock of the United States Advertising Corporation.

On March 5, 1928, the Commercial Credit Co. of Baltimore and the Dealers Finance Co. entered into an agreement to " consolidate." Under the agreement the Dealers Finance Co. transferred all of its property and assets to the Commercial Credit Co. in exchange for stock and notes of the Commercial Credit Co. and the assumption by the Commercial Credit Co. of all of the liabilities of the Dealers Finance Co. The Dealers Finance Co. received from the Commercial Credit Co. stock and notes having a total fair market value of

$600,000. The Dealers Finance Co. reported no gain in its income tax return for 1928 upon the transfer of its assets and paid no tax thereon.

The Class B shareholders of the Dealers Finance Co. surrendered their stock on April 18, 1928, in exchange for their proportionate part of the securities owned by the Dealers Finance Co. During 1928 the Dealers Finance Co. sold some of the notes and stock received from the Commercial Credit Co. and reported a profit of $203,645.58 upon the sale of these items. It made no other purchases or sales of securities during the period from March 1 to December 26, 1928, and had no other income except interest on the notes and dividends on the stock acquired in the transaction above mentioned.

On March 8, 1928, Willys-Overland entered into an agreement with the Commercial Credit Co., whereby the Commercial Credit Co. agreed to finance both new and used cars for Willys-Overland dealers, both wholesale and retail, for a period of three years. Willys-Overland agreed to deal and do business exclusively with the Commercial Credit Co., to recommend exclusively to its distributors and dealers the financing facilities provided by the Commercial Credit Co., to use its best efforts to discourage the use by its distributors and dealers of other financing facilities, and that during the life of the contract "neither it nor any of its subsidiary companies now existing or hereafter to be organized, shall engage in the business of the financing of retail sale of automobiles; nor shall it, nor any of its subsidiary companies, become associated with or identified with or aid directly or indirectly any corporation, common law trust, firm or other association than Commercial Credit, and its Affiliated Companies in financing the retail sale of automobiles during the life of this contract."

The financial condition of the Dealers Finance Co. at the close of business December 25, 1928, and at the beginning of business December 26, 1928, as shown by the books of the company was as follows:

ASSETS:

| | | |
|---|---|---|
| J. H. Gerkins—trustee account | $7,143.18 | |
| Less: Delaware filing fee not entered | 2.00 | |
| | | $7,141.18 |
| Accounts receivable—securities ledger | | 390,247.28 |
| Securities owned— | | |
| 6 Shares Com. Credit 6½ Preferred | | 282.84 |
| 4,644 Shares Com. Credit Common | | 55,825.74 |
| Accounts receivable—Com. Credit Co | | [1] 859.49 |
| Total assets | | 454,356.53 |

---

[1] Income tax attributable to first two months of 1928 assumed and paid by Commercial Credit Co.

LIABILITIES:
Reserve for Federal Taxes—
    Additional Assessment 1927_____ $859. 00
    Year 1928_____ 24, 994. 29
Interest on 1927 additional tax_____ 42. 98
Contingent reserve _____ $13, 364. 37
    Less: charge for interest on 1927—
        Additional tax assessment_____ $42. 98
        Charge for Delaware filing fee not
            entered_____ 2. 00
                                            ——— 44. 98
                                                        ——— 13, 319. 39
Capital stock—Class A_____:_____ 125, 000. 00
Surplus _____ $287, 773. 75
Reserve for Federal taxes in excess of tax liability_ 2, 366. 52
                                                        ———
    Total surplus_____ 290, 140. 27
                                                                    ———
        Total liabilities_____ 454, 356. 53

The net assets of Dealers Finance Co. on December 26, 1928, per books, and the fair market value thereof on the same date, were as follows:

|  | Cost per books | Fair market value |
|---|---|---|
| Total assets_____ | $454, 356. 53 | $664, 725. 95 |
| Total liabilities_____ | 39, 216. 26 | 39, 216. 26 |
| Net_____:____ | 415, 140. 27 | 625, 509. 69 |

The minutes of a meeting of the board of directors of the Dealers Finance Co. held on December 26, 1928, are in part as follows:

On motion, duly seconded and unanimously carried, the following resolution was adopted:

WHEREAS, this corporation has surplus profits invested in stock and/or securities the value of which exceeds the par value of outstanding Class A shares of the corporation and which are available for distribution to the holder of the Class A shares of this corporation, subject, however, to the rights which the persons who were the holders of Class B shares of this corporation have in certain reserves set up on the books of the corporation pursuant to the resolution of the board of directors of this corporation passed on March 7, 1928;

THEREFORE, BE IT RESOLVED that a dividend equal to the amount of the surplus of this corporation be declared, payable in such stock and/or securities as the corporation may have in excess of the value of $125,000.00, the amount of the par value of the Class A shares of this corporation, and the amount of the reserves subject to the interest of the former holders of the Class B shares in the reserves which are set up on the books of the corporation pursuant to the resolution of the board of

directors of this corporation passed on March 7, 1928. Distribution pursuant to the provisions of this resolution shall be made at the earliest convenience of the officers of this corporation to the stockholders of record at the close of business on December 26, 1928.

On motion, duly seconded and unanimously carried, the following resolution was adopted:

BE IT RESOLVED that this corporation liquidate by distributing to the holder of the Class A shares the assets of this corporation amounting to $125,000.00, upon the surrender by the holder of the Class A shares of this corporation of $125,000.00 par value of Class A shares of this corporation, subject, however, to the rights of the former holders of the Class B shares to participate in the reserve set up on the books of this corporation pursuant to the resolution of the board of directors passed on March 7, 1928, the property represented by said reserve to be transferred to the holder of the Class A shares of this corporation except that such holder shall receive the property set up in said reserve subject to the terms and conditions of the aforesaid resolution providing for said reserve. Distribution pursuant to the provisions of this resolution shall be made at the earliest convenience of the officers of this corporation to the stockholders of record at the close of business on December 26, 1928. Ward M. Canaday. Inc. shall, upon receipt of such distribution, file with this corporation an agreement to pay any outstanding liabilities of this corporation.

Assets of a market value of $500,509.69 were delivered by the Dealers Finance Co. to the petitioner on December 26, 1928, and were entered on the books of the petitioner at that value. Thereafter, on the same day, assets of the Dealers Finance Co. having a value of $125,000 were delivered by the Dealers Finance Co. to the petitioner upon surrender by the petitioner of the Class A stock of the total par value of $125,000.

There was also delivered to the petitioner on the same day the sum of $39,216.26, subject to rights of the holders of Class B shares therein, and subject also to the payment of Federal taxes. Of this reserve, $25,896.87 was later paid out by the petitioner on account of Federal income taxes of the Dealers Finance Co., as follows:

| | |
|---|---:|
| Income taxes for 1928 | $24,994.29 |
| Additional income taxes for 1927 | 859.60 |
| Interest on additional taxes for 1927 | 42.98 |
| Total | 25,896.87 |

The amount of $10,321.71 was distributed to Class B stockholders and the balance of the reserve, $2,997.68, was retained by the petitioner. The Commissioner in 1930 refunded to the Dealers Finance Co. $624.43 of the tax paid for 1928.

On December 26, 1928, the Dealers Finance Co. amended its certificate of incorporation and thereafter issued new classes of its stock for certain property and thereafter dealt in securities and stocks of other corporations, but did not thereafter deal in financing time sales of automobiles.

The petitioner contends that the distribution by the Dealers Finance Co. of the latter's assets of the value of $500,509.69 on December 26, 1928, was the distribution of an ordinary dividend, not taxable to a corporation. See section 23 (p), Revenue Act of 1928. The Commissioner has held that the distributions on December 26, 1928, were in liquidation and taxable to the petitioner to the extent that the value of the assets received exceeded $100,000, the cost of the stock to the petitioner, in accordance with section 115 (c) of the Revenue Act of 1928. Section 115 defines a dividend as " any distribution made by a corporation to its shareholders, whether in money or in other property, out of its earnings or profits accumulated after February 28, 1913." Subsection (c) provides:

(c) *Distributions in liquidation.*—Amounts distributed in complete liquidation of a corporation shall be treated as in full payment in exchange for the stock, and amounts distributed in partial liquidation of a corporation shall be treated as in part or full payment in exchange for the stock. * * *

Subsection (h) is as follows:

(h) *Definition of partial liquidation.*—As used in this section the term " amounts distributed in partial liquidation " means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

The distribution here in question was out of earnings or profits accumulated after February 28, 1913. But if it was, at the same time, a distribution in liquidation, an amount distributed in partial liquidation, or one of a series of distributions in liquidation of the corporation so that (c) applies, the Commissioner did not err. *W. E. Guild*, 19 B.T.A. 1186. *Hellmich* v. *Hellman*, 276 U.S. 233. The petitioner relies very strongly upon the fact that the resolution of the board of directors directing the distribution of a " dividend " of all surplus, payable in such assets " as the corporation may have in excess of the value of $125,000 " was recorded as having been adopted prior to the adoption of the resolution to liquidate. We do not think that this fact is determinative of the issue. It is but one circumstance. We must decide whether there was an ordinary dividend or a distribution in liquidation within the meaning of section 115 after considering all of the facts in this particular case. *W. E. Guild, supra.* We make special reference here to our discussion of the law on this question in the *Guild* case. State statutes and decisions are not binding in interpreting this language of the Federal statutes. *Frelmort Realty Corp.*, 29 B.T.A. 181. We must also look beyond the mere words used in the corporate resolutions. *Estate of Rudolph F. Rabe, Sr.*, 25 B.T.A. 1242.

A full consideration of all of the facts in this case leads us, as it did the Commissioner, to the conclusion that all of the amounts distributed on December 26, 1928, were distributed in liquidation of the corporation. Although the Dealers Finance Co. was authorized to do a number of things under its charter, as theretofore amended, there can be no question as to the business in which it was actually and regularly engaged prior to March 1928. In March 1928 it disposed of all of its assets with which it had carried on that business and never thereafter engaged in that business. Cf. *James P. Gossett*, 22 B.T.A. 1279; affd., 59 Fed. (2d) 365; *Milton Tootle, Jr.*, 20 B.T.A. 892; affd., 58 Fed. (2d) 576. From that time until it made the distributions here in question, it carried on no business but limited its activities to the conversion into cash of some of the securities received in exchange for its former assets and to the retirement of its Class B stock. Then came December 26, 1928, with the resolutions and distributions described above. Thereafter the corporation was dead so far as its old business was concerned, a mere empty shell without shareholders or property. Cf. *Rochester Ry. Co.* v. *Rochester*, 205 U.S. 236. Later, new stockholders refilled the shell with different property. The corporation then went into a new and totally different life. Its failure to dissolve is not inconsistent with our holding that the distributions were in liquidation of the corporation. *Frelmort Realty Corp., supra*. The facts here show that the corporation was in the course of liquidation at the time of the distribution and that it completed its liquidation on the same day. The distribution of the $500,509.69 was a step in that process. *Tecla M. Straub*, 29 B.T.A. 216. Cf. *Fred T. Wood*, 27 B.T.A. 162.

The petitioner next contends that the distribution of $25,000 out of the $125,000 which it received in cancellation or redemption of its stock was essentially equivalent to the distribution of a taxable dividend so that section 115 (g) applies. As a basis for this contention it points out that it originally paid in only $100,000 for 20,000 shares and that it received 5,000 shares as a stock dividend in 1926. It argues therefore that the $25,000 distributed must have been earnings accumulated after February 28, 1913. Section 115 (g) provides that " if a corporation cancels or redeems its stock (whether or not such stock was issued as a stock dividend) at such time and in such manner as to make the distribution and cancellation or redemption in whole or in part essentially equivalent to the distribution of a taxable dividend, the amount so distributed  *  *  *  to the extent that it represents a distribution of earnings or profits accumulated after February 28, 1913, shall be treated as a taxable dividend." The petitioner has fallen far short of showing that this distribution was made at such time and in such manner as to make it essentially

equivalent to the distribution of a taxable dividend. *Henry B. Babson*, 27 B.T.A. 859; *Annie Watts Hill*, 27 B.T.A. 73; affd., 66 Fed. (2d) 45; *Pearl B. Brown, Executrix*, 26 B.T.A. 901; *Rudolph Boehringer*, 29 B.T.A. 8. It was what the Commissioner held it to be—a distribution in liquidation of the corporation.

The respondent has moved to increase the deficiency so as to include as a part of the liquidating dividend, $2,997.68 and $624.43. He had the burden of proof in this connection. On December 26, 1928, the Dealers Finance Co. delivered to the petitioner the sum of $39,216.26. From this fund the petitioner was to pay certain Federal taxes of Dealers Finance Co. It actually paid out of this fund $25,896.87 on account of Federal income taxes of the Dealers Finance Co. This included an overpayment of $624.43 of the tax due for 1928. A refund of this amount was made to the Dealers Finance Co. by the Commissioner in 1930. Any balance remaining after the discharge of all Federal taxes of Dealers Finance Co. was to be divided in some way not shown in the record between the petitioner, as Class A stockholder, and the former Class B stockholders. The petitioner actually retained as its share $2,997.68. This amount was income to it in 1928, as the respondent contends. We do not know, however, that the petitioner ever received any part of the $624.43 refunded by the Commissioner in 1930 to the Dealers Finance Co., nor do we know the portion of this amount, if any, to which the petitioner was entitled. Consequently, we can not say that any part of the $624.43 should be included in the petitioner's income for 1928.

*Decision will be entered under Rule 50.*