FRED T. WOOD, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 38808.    Promulgated November 29, 1932.

*V. L. Kaye, Esq.*, and *Milton Sevier, Esq.*, for the petitioner.
*F. R. Shearer, Esq.*, for the respondent.

## OPINION.

GOODRICH: While the issue expressly raised by the pleadings relates to the character of the distributions received by petitioner from the Lakemont Company under the resolutions adopted by its directors on December 15, 1925, the further problem called to attention upon brief naturally arises under the issue presented and, since its determination is necessary to the ascertainment of petitioner's tax liability for the year 1925, we will consider it. Petitioner, relying mainly upon *Chattanooga Savings Bank* v. *Brewer*, 9 Fed. (2d) 982; affd., 17 Fed. (2d) 79; certiorari denied, 274 U. S. 751; and *Hadley* v. *Commissioner*, 36 Fed. (2d) 543; affirming 6 B. T. A. 1031, contends that, because he was the sole owner of the stock of this corporation and gave to the corporation no notes representing his indebtedness

for the funds received by him on its behalf and by him retained in years prior to 1925, such funds should be treated as distributions made by the corporation to him in those years, without the necessity of corporate declaration, and taxable to him when received, despite the fact that the company's books of account reflected these sums as accounts receivable from petitioner.

We think those decisions are not controlling of the case at bar. There, the taxpayers had received money from the corporations without the formal declaration of dividends, and the Commissioner treated such sums as income to them when received. The taxpayers failed to convince the courts that the Commissioner's action was erroneous. Here, the Commissioner has treated the sums received by petitioner according to the facts as presented by the records of the corporation, that is, he has regarded them, not as income to petitioner when received, but as debts owing to the company. Petitioner has failed to convince us that this action is erroneous. Prior to May 15, 1923, petitioner was not the sole owner of the stock of the corporation, yet had received and withheld substantial amounts of the corporate funds. What arrangements, if any, he had made with the other stockholders respecting this matter, we do not know. This record discloses no reason why the amounts charged to petitioner should not be regarded as accounts receivable from him as reflected by the books, notwithstanding the fact that the conduct of the corporate business was exceedingly informal. The company might have undertaken a new venture—its powers were sufficiently broad—and called upon petitioner for payment; former stockholders might have demanded pro rata payment of the funds retained by petitioner; creditors of the corporation might have required repayment—such occurrences were possible during the course of the company's operation. True, book entries are not necessarily binding if proved to be in error, but, we repeat, petitioner has failed to prove to us that the corporate records reflecting the sums retained by petitioner as an account receivable from him did not disclose the facts and that such sums now should be treated as distributions and taxable to him when received.

However, we are convinced that the distributions declared by the resolution of December 15, 1925, were in liquidation of the corporation. Liquidation has been defined as the operation of winding up the affairs of a corporation by realizing upon its assets, paying its debts and appropriating the amount of its profit or loss. *W. E. Guild*, 19 B. T. A. 1186, and cases there cited. It differs from the normal operation of the corporation for current profit in that it ordinarily results in the winding up of the corporation's affairs. There must be a manifest intention to liquidate, a continuing purpose to terminate its affairs and dissolve the corporation, and its activities

must be directed and confined thereto. It contemplates an impairment of capital or a retirement of outstanding stock, though a distribution, if one of a series of distributions in liquidation, may be a liquidating dividend even if it, of itself, does not impair capital. Liquidation can not be brought about by mere declaration, and the question of whether a corporation is in liquidation is therefore one of fact. See *W. E. Guild, supra; James P. Gossett*, 22 B. T. A. 1279; affd., 60 Fed. (2d) 484; *Martha Briggs Phelps*, 20 B. T. A. 866; affd., 54 Fed. (2d) 289; *E. G. Perry*, 9 B. T. A. 796; *Milton Tootle, Jr.*, 20 B. T. A. 892.

In the case before us, the facts show that the Lakemont Company was in the process of liquidation at the end of 1925. Its ordinary business had been the subdivision, development and sale of a certain tract of land. This it had accomplished—there remained to do only certain incidents necessary in installment sales and it engaged in no other activities. There was a declared intention to liquidate, manifest by the instructions given respecting compliance with the formal requisites of the distribution of the company's assets, and there was an impairment of its capital. It was engaged in winding up its affairs and was dissolved when that had been accomplished. We hold, therefore, that the distribution declared by the resolution of December 15, 1925, was one made in partial liquidation of the corporation within the meaning of paragraph (h) of section 201 of the Revenue Act of 1926; that the gain resulting to petitioner upon the receipt thereof should be determined as provided in paragraph (c) of that same section, and taxed as capital net gain in accordance with petitioner's election. Cf. *Hellmich* v. *Hellman*, 276 U. S. 233.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

SMITH, dissenting: The respondent has treated the 1925 dividends, to the amount of the corporation's surplus at the date of the payment of the dividends ($50,204.18), as ordinary dividends under section 210 (a) of the Revenue Act of 1926. The respondent followed the letter of the law in such treatment. There were no distributions in complete liquidation under section 201 (d) in 1925, and none in partial liquidation as that term is defined in section 201 (h), which subdivision reads:

As used in this section the term " amounts distributed in partial liquidation " means a distribution by a corporation in complete cancellation or redemption of a part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock.

There was clearly an intent that the dividend of $60 per share declared in 1925 should be a liquidating dividend. The petitioner recognized, however, that the dividend of $90 per share in 1925 was

not in partial liquidation of his stock and returned the amount as a taxable dividend in his original return. There was no actual liquidation until 1927.

VAN FOSSAN, dissenting: I find myself in disagreement with the majority of the Board in this case. The question originally raised by the parties, i. e., whether under the facts dividends credited to petitioner's account by the Lakemont Company were liquidating dividends, involves consideration of the legal effect of the prior conduct of the company's affairs under which, from 1920 to 1925, petitioner, the sole stockholder of said company, retained all moneys collected by him as selling agent, paid all expenses, and was charged on the company's books with the net amount so retained.

Petitioner contends in his brief that the sums so retained by him were tantamount in law to distributions by the corporation and became income to petitioner in the years collected by him and charged on the books of the company. He relies on *Chattanooga Savings Bank* v. *Brewer*, 9 Fed. (2d) 982; affd., 17 Fed. (2d) 79; certiorari denied, 274 U. S. 751; *Hadley* v. *Commissioner*, 36 Fed. (2d) 543; affirming 6 B. T. A. 1031, and other cases.

As appears from the findings of fact, petitioner during and prior to the taxable year was the sole stockholder of the Lakemont Company. After 1923 he was also, in his individual capacity, its selling agent. He or his sales force made all sales, collected all money, and paid all expenses and Wood pocketed what remained. No money was ever turned in to the corporation and it had no bank account. The company kept incomplete books, but did charge to Wood's account the net amount above expenses paid retained by Wood. There is no evidence of an intention later to account or pay to the corporation. Wood gave no notes or other evidence of indebtedness to the corporation and paid no interest, and, being the sole stockholder, was in as full enjoyment and use of the funds so retained as though the usual formalities of business—payment into the corporation of funds collected, entries on the books, payment of corporate expenses, formal declaration and payment of dividends to him as a stockholder—had been strictly complied with. Were the Government here contending that the amounts so received and retained were income to petitioner in the years when received regardless of the year when formal dividends were later declared, ample authority would be found for sustaining its position. In *Chattanooga Savings Bank* v. *Brewer*, *supra*, the court said:

In order to be dividend for the purposes of income tax, a distribution need not be called a "dividend." There need be no formal declaration. Holmes' Federal Taxes, p. 774, sec. 407. This fund constituted a portion of the earnings or profits of the Key-James Brick Company for the year 1920, and was as a matter of fact distributed to its two shareholders in that year.

I cannot concur in the proposition, so plausibly advanced by able counsel, that the resolution of the board of directors of July 14, 1921, declaring a dividend and ordering a distribution, ipso facto impressed this fund with the characteristics of income for 1921. At the date of this resolution directing that "the sum of $70,805.52 be withdrawn from the surplus account and distributed to the stockholders in proportion to their shareholding," and the further direction that distribution be made to James and Key, the corporation did not have the money to withdraw or distribute. The money had the year before been withdrawn and distributed by Mr. Key.

Real facts, rather than record resolutions, give rise to income. Resolutions of directors, after all, are no more than evidential. *Doyle* v. *Mitchell*, 247 U. S. 179, 38 S. Ct. 467, 62 L. Ed. 1054 (T. D. 2723) ; *Southern Pac. R. Co.* v. *Muenter*, 260 F. 837, 171 C. C. A. 563 (T. D. 2944) ; *Douglas* v. *Edwards*, (C. C. A.) 298 F. 229. In other words, the government is not precluded from going behind the corporation's books and assessing the tax upon the basis of actual facts. If the distribution of the money by Mr. Key in 1920 was a distribution at all, as distinguished from a loan, then it by the very terms of the act of 1918—section 201, subsec. (a)—was conclusively presumed to be taxable for 1920, and this because it was not the policy of Congress, as pointed out in the cases of *Harder* v. *Irwin* (D. C.) 285 F. 402 (T. D. 3420), and *Douglas* v. *Edward* (C. C. A.) 298 F. 237, to allow taxpayers by means of bookkeeping or otherwise to determine for themselves to what year such distribution should be allocated.

And in *Hadley* v. *Commissioner*, *supra*, the court observes as follows:

It is elementary that the mere declaration of a dividend does not constitute either a dividend or a distribution. Before there can be a dividend there must be a declaration of such by the proper officers and funds set aside for its payment. It then becomes the property of the stockholder to the extent that he may maintain an action against the corporation for its recovery. While there was no declaration of a dividend in this case, there was a determination of the amount of profits or earnings to which the respective stockholders were entitled. One stockholder was paid his share in cash. The shares of the others were credited to their respective accounts on the books of the corporation in such a manner as to bring the fund within the absolute and unqualified dominium and control of the stockholder. While, technically speaking, this would not amount to the declaration of a dividend, it would amount to a distribution of the assets in such manner that the theory of corporate entity is not affected or disregarded, since it is settled law that the division of profits of a corporation among its stockholders amounts to a constructive dividend whether it is intended by the directors or stockholders to constitute a dividend or not. *Chattanooga Savings Bank* v. *Brewer*, (C. C. A.) 17 F. (2d) 79, certiorari denied 274 U. S. 751, 47 S. Ct. 764, 71 L. Ed. 1332.

After commenting on the *Chattanooga Savings Bank* case, to which it referred with approval, the court further states:

It does not clearly appear whether the taxpayer rendered his returns on a cash or accrual basis, but we think this is not material, since the mere credit of his account with the earnings constituted an accrual. *United States* v. *Anderson*, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347. However, according to the practice of the Department, the amounts were constructively received when credited. Under article 4, paragraph 51, Treasury Regulations 33, art. 53, it is provided as follows: " Income which is credited to the account of or set apart

for a taxpayer and which may be drawn upon by him at any time is subject to tax for the year during which so credited or set apart, although not then actually reduced to possession. To constitute receipt in such a case the income must be credited to the taxpayer without any substantial limitation or restriction as to the time or manner of payment or condition upon which payment is to be made. A book entry, if made, should indicate an absolute transfer from one account to another. If the income is not credited, but is set apart, such income must be unqualifiedly subject to the demand of the taxpayer. * * * The distinction between receipt and accrual must be kept in mind. Income may accrue to the taxpayer and yet not be subject to his demand or capable of being drawn on or against by him."

Clearly, under this rule the earnings set aside in the present case must be construed as a receipt instead of an accrual, since the share of the earnings belonging to the appellant was not only placed to his credit on the books of the corporation, but was brought unqualifiedly subject to his demand. It was money available for his use as much as if it had been placed in his bank account subject to check.

See also *F. G. Lamb*, 14 B. T. A. 814; *Lincoln National Bank, Executor*, 23 B. T. A. 1304.

In the instant case it does not clearly appear whether petitioner's returns are on a cash or an accrual basis, but in line with the above reasoning I deem it immaterial to this decision.

Here the parties are reversed as respects position. The taxpayer is urging the soundness of the above propositions of law and the Government has determined that the sums in the hands of the petitioner constitute income in the year in which dividends were declared, without regard for when the funds came into petitioner's hands. Such, at least, is the effect of respondent's determination.

However, the law is not fixed by the relative positions of the respective parties. It is based on principles of logic and reason. The immediate incidence of a ruling is usually of small concern. We believe the authorities cited, and others to the same effect, require a holding that formal declarations by the corporation of dividends were not necessary to the fixation of petitioner's income and that the funds collected and retained by him became income in the year when so collected. It follows that the action of the corporation in declaring dividends in any year was a futile gesture and was of no legal effect, except in so far as they applied to earnings of the current year. As to this year such declarations constitute ratification of the action of petitioner in retaining the funds, but added nothing to income already acquired by him when the funds were received and retained.

The effect in this case of the above conclusions is that for the taxable year 1925 petitioner should be held liable for tax on income received measured by the amount actually received and retained by him. There being no evidence that leads me to conclude that at the time the funds were received by Wood they were, under the above

principles, other than ordinary distributions of earnings, the amount received in 1925 should be taxed as an ordinary dividend. From Exhibit 10 it appears that the amount added to Wood's account in 1925 was $28,333.50. In my view of the case this amount should be taken as his taxable income for that year. The balance of the Wood account, having been received by Wood in prior years, would not be taxable in 1925.