ELIZABETH P. PATTERSON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MARY N. WINSLOW, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 76058, 76059.   Promulgated September 18, 1935.

*Caesar L. Aiello, Esq.*, for the petitioners.
*B. M. Coon, Esq.*, and *J. W. Smith, Esq.*, for the respondent.

OPINION.

ARUNDELL: Respondent determined deficiencies in the 1930 and 1931 income tax of Elizabeth P. Patterson in the amounts of $1,211.16 and $6,297.90, respectively, and in the 1931 income tax of Mary N. Winslow in the amount of $61.62.   Each of the petitioners challenges the respondent's determination as to her as erroneous in that respondent used an incorrect basis for the determination of the gains derived from sales of parts of the so-called Patterson tract, in the District of Columbia, with a consequent overstatement of those gains.   The proceedings were consolidated for hearing.

The petitioners are individuals, citizens of the United States, and residents of the District of Columbia.

Catherine Pearson, deceased, left a last will and testament, dated December 4, 1862, which was duly probated and recorded, the effect of which was to give and devise all of her residuary estate, including the Patterson tract, in trust, to her daughter, Eliza Patterson, for life, with remainder to her said daughter's children.

Eliza Patterson died on January 27, 1902, leaving surviving her, as sole heirs at law and next of kin, three daughters, Kate LaMon-

58

· tagne, Harriet Winslow, and Elizabeth P. Patterson, petitioner, in whom the title to the Patterson tract, and other property, became vested under the will of Catherine Pearson.

Said Elizabeth P. Patterson and her two sisters, by an indenture in writing dated November 19, 1902, transferred and conveyed to the American Security & Trust Co., of Washington, D. C., Francis Winslow and Augustus Jay, as trustees, all of their property, including the Patterson tract, to be held by the trustees, in and upon the trust, and for the uses and purposes hereinafter set forth.

Under and by virtue of the trust indenture of November 19, 1902, petitioner Elizabeth P. Patterson and her two sisters reserved for themselves a life tenancy in the trust estate so created by them, and further provided:

In the event of the death of either of said life tenants, to hold the share then held for the life of the one so dying, in trust for such uses and purposes as such life tenant may, by last will and testament, or by paper writing in the nature of a last will and testament, direct and appoint; and in the event of a non-execution of said power of appointment, then in trust for the use of any child or children of hers as may be living at the time of her death, and the descendants then living of such child or children as may have deceased, as tenants in common in fee simple; the descendants of any deceased child to take per stirpes. * * *

As to the termination of the trust estate, it was provided thereunder:

And upon the death of the last survivor of said life tenants, to hold said property and estate, subject to the provisions of these presents, until the youngest child of either of said life tenants then living, and entitled hereunder, shall attain the age of twenty-one years. And if such youngest child shall then be twenty-one years of age, or when such youngest child shall attain the age of twenty-one years, then in trust to convey the estate and property, held in trust under the provisions of these presents, to the persons lawfully entitled thereto hereunder as aforesaid, in fee simple.

Kate LaMontagne, one of the parties to the trust indenture, died on August 1, 1917, leaving a last will and testament, which was duly recorded and admitted to probate in the Supreme Court of the District of Columbia. Thereunder, after making bequests not involved herein, she gave, devised, and bequeathed unto her sister, Elizabeth P. Patterson, petitioner, all of the rest, residue, and remainder of her estate, both real and personal, as to which she had the power of appointment by virtue of the indenture of November 19, 1902. Accordingly, petitioner Elizabeth P. Patterson acquired and became entitled in 1917 to an additional one-third interest in the trust estate created by the indenture of November 19, 1902, which had amongst its assets the Patterson tract aforesaid.

Harriet Winslow, another of the parties to the trust indenture, died on June 27, 1923, leaving a last will and testament, which was

duly recorded and admitted to probate in the Supreme Court of the District of Columbia. Thereunder, after making bequests not involved herein, she gave, devised, and bequeathed all of the rest and residue of her estate, real and personal, over which she had the power of testamentary disposition to her two daughters and four sons. Each daughter was given a one-fourth share and each son a one-eighth share. By exercising in this manner the power of appointment she had under the trust indenture of November 19, 1902, there passed to her children a one-third interest in said trust estate. Accordingly, petitioner Mary N. Winslow acquired and became entitled in 1923 to a one-fourth of one-third fee simple interest in said trust estate, which had amongst its assets the Patterson tract aforesaid.

Thereafter petitioner Elizabeth P. Patterson and six Winslow heirs, being all of the parties then entitled to the rights, title, and interest in and to the assets and property of the trust estate created in 1902, entered into and became parties to three instruments in writing, dated November 8, 1924, whereby they undertook to create a new trust, into which they transferred and conveyed personal property, securities and cash, and real estate, including the Patterson tract, namely:

(a) Agreement of November 8, 1924, made by and between Elizabeth P. Patterson et al., parties of the first part, called the grantors, and Carlile P. Winslow, Pearson Winslow, and the American Security and Trust Co., parties of the second part, called trustees. This agreement recites that:

* * * the grantors desire to establish, in the hands of the trustees, a trust fund for the use and purposes hereinafter set forth, including the maintenance of a fund for the payment of taxes, and other expenses necessary for the maintenance and upkeep of certain real estate conveyed by indenture of even date herewith, executed by one Albert H. Shillington, unmarried, of Washington, in the District of Columbia, conveying to the parties hereto of the second part, the said real estate (Patterson Tract) upon certain trusts therein set forth. * * *

Under the aforesaid agreement petitioner Elizabeth P. Patterson was entitled to receive one half of the net income from the personalty and two thirds of the net income from the real estate, and the remaining income was to be divided among the Winslow heirs in the proportions set forth therein.

(b) Agreement of November 8, 1924, made by and between Albert H. Shillington, called the grantor, party of the first part, Carlile P. Winslow, of Madison, Wisconsin, Pearson Winslow, of New York City, and the American Security & Trust Co., called the trustees, parties of the second part. This agreement reads in part, as follows:

Whereas, Elizabeth P. Patterson, Harriet P. Winslow, Carlile P. Winslow, Mary N. Winslow, Francis N. Winslow, Pearson Winslow and Cameron Win-

slow, hereinafter called the beneficiaries, conveyed the hereinafter described real estate unto the above named Grantor by deed bearing date on the 8th day of November, 1924, for the purpose of having the same conveyed to said trustee, upon the trusts hereinafter set forth, in evidence whereof said beneficiaries sign these presents:

and then by express terms conveys unto the trustees the Patterson tract, embracing 81.76 acres here involved, in trust upon certain terms and conditions therein set forth. Thereunder, petitioner Elizabeth P. Patterson became entitled to two thirds of the net income derived from the management and sale of the Patterson tract, or any part thereof, and petitioner Mary N. Winslow became entitled to one twelfth of any such net income.

The trustees were empowered to take possession of such real estate and the rents, issues, and profits thereof, with full power to sell the same or any part thereof and convey fee simple title thereto; to borrow money thereon; to lease the same or any part thereof; to pay all taxes, local and Federal, and the cost of repairs and improvements; and to do all things necessary and requisite for the preservation and management of the property.

(c) Deed of November 8, 1924, from Elizabeth P. Patterson, Harriet P. Winslow, Carlile P. Winslow, Mary N. Winslow, Francis Winslow, Pearson Winslow, and Cameron Winslow, and the American Security & Trust Co. and Carlile P. Winslow, as trustees, to Albert H. Shillington, unmarried, conveying the aforesaid Patterson tract. The following statement appears therein referring to the 1902 trust:

Whereas the parties hereto of the first part, in their various capacities, as herein above set forth, are desirous of terminating finally the trusts, in so far as the same still exist under the aforesaid indenture of trust, and of conveying a complete and fee simple title * * *.

Pursuant to the aforesaid agreements and deed, title to the Patterson tract became vested in the American Security & Trust Co., Carlile P. Winslow, and Pearson Winslow, trustees, who took the property and exercised all of the rights of ownership therein on and after November 8, 1924.

Beginning in the year 1928 and subsequently, the trustees under the 1924 trust made sales of parts of the Patterson tract. Such sales were reported by them in appropriate fiduciary returns. For each sale made a basis was taken by the trustees reflecting the fair market value as of 1924 when the trust was created, and the amount received in excess of such basis was reported as capital gain to the beneficiaries of the trust, who reported the same and paid a tax thereon.

The aggregate of the bases claimed by the trustees and allowed by respondent in respect of sales from the Patterson tract in 1928 and 1929 is $458,095.20.

The fiduciary return made by the American Security & Trust Co., trustee, for the year 1930 shows that the trustees under the 1924 trust sold a parcel of ground, consisting of 6,375 square feet, located at the corner of Fourth Street and Florida Avenue, for the sum of $19,125. A cost of $14,343.75 was claimed for this ground, being approximately $2.25 per square foot, leaving a balance of $4,781.25 which was reported as capital gain and a tax paid thereon by the beneficiaries of the trust.

The fiduciary return made by the American Security & Trust Co., trustee, for the year 1931 shows that various parcels of ground were sold by the trustees for the sum of $123,995.46. A cost of $75,759.73 was claimed for this ground, leaving a balance of $48,235.73 which was reported as profit and a tax paid thereon.

The respondent held, in the case of petitioner Elizabeth P. Patterson, that the gains resulting from the trustees' sales of parcels of the Patterson tract are determinable upon the basis of the fair market value, as of March 1, 1913, of the one-third interest in the tract acquired in 1902 under the will of her grandmother, Catherine Pearson, plus the fair market value, as of August 1, 1917, of the one-third interest acquired on that date under the will of her sister, Kate LaMontagne. In the case of the Winslow heirs, of which petitioner Mary N. Winslow is one, he held that the basis is the fair market value, as of June 27, 1923, of the one-third interest in the Patterson tract acquired on that date under the will of their mother, Harriet Winslow. He then determined that the fair market values of the Patterson tract were, as of March 1, 1913, and August 1, 1917, $429,240, and, as of June 27, 1923, $540,000. With these values fixed, he then determined that the basis to petitioner Elizabeth P. Patterson of her two-thirds interest is $286,160, and that the basis to the Winslow heirs of their one-third interest is $180,000. He then held that two thirds of the aggregate of the bases claimed by the trustees in their fiduciary returns for 1928 and 1929, and allowed, in respect of sales from the Patterson tract in those years, which aggregates amounted to $458,095.20, is chargeable to petitioner Elizabeth P. Patterson, and since that two thirds, amounting to $305,296.80, exceeds the basis for her two-thirds interest, she is entitled to recover nothing further and the full amounts received from sales in 1930 and 1931 constitute capital gains. By the same process he concluded that all but $22,510.35 of the basis to the Winslow heirs of their one-third interest had been exhausted or recovered prior to 1931, and that they were not entitled to recover anything more than that amount.

It is not disputed that the trust created by the instrument of November 8, 1924, is a revocable trust and that the income thereof is, by

section 166 of the Revenue Act of 1928,[1] taxable to Elizabeth P. Patterson and the Winslow heirs, as the grantors.

The sales involved in these proceedings were made in 1930 and 1931 when the Revenue Act of 1928 was in effect. The provisions of that act, therefore, govern in the determination of the basis for gain or loss. The petitioners quote provisions of the Revenue Act of 1924 as determinative because that act was in effect when the transfer in trust was made. That view is erroneous. It is plain that the amount of income must be determined under the act in effect when the sales were made, and one of the factors in that determination is the basis. Even though the bases were different under the two statutes, there is nothing invalid in requiring the use of that prescribed in the later act. Cf. *Taft* v. *Bowers*, 278 U. S. 470; *MacLaughlin* v. *Alliance Insurance Co.*, 286 U. S. 244.

Section 113 (a) (3) of the Revenue Act of 1928, set out in full in the margin,[2] provides in substance that in the case of property transferred in trust after December 31, 1920, the basis shall be the same as it would be in the hands of the grantor. In this case we are concerned with three interests that were transferred in trust, namely, a one-third interest acquired by Elizabeth Patterson as remainderman under the will of Catherine Pearson; a one-third interest acquired by Elizabeth Patterson as appointee of Kate LaMontagne; and a one-twelfth interest acquired by Mary Winslow as appointee of Harriet Winslow.

The one-third interest of Elizabeth Patterson acquired as remainderman was acquired prior to March 1, 1913, and the basis under section 113 (a) (5) and section 113 (b) (2) of the Revenue Act of 1928 is fair market value either at the time of the death of the decedent under whose will she acquired the property or at March 1, 1913, whichever is greater. The respondent has used fair market value at March 1, 1913, and we assume that that was greater than the value at the earlier date, as the petitioner has failed to put in evidence of the earlier value. Cf. *Huyler's, Inc.*, 24 B. T. A. 425.

The other two interests transferred to the trustees were acquired by exercise of powers of appointment. Section 113 (a) (4) of the

---

[1] SEC. 166. REVOCABLE TRUSTS.

Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of the trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

[2] (3) TRANSFER IN TRUST AFTER DECEMBER 31, 1920.—If the property was acquired after December 31, 1920, by a transfer in trust (other than by a transfer in trust by a bequest or devise) the basis shall be the same as it would be in the hands of the grantor, increased in the amount of gain or decreased in the amount of loss recognized to the grantor upon such transfer under the law applicable to the year in which the transfer was made.

Revenue Act of 1928, set out in the margin,[3] provides, when read in connection with the provisions of the estate tax statutes therein referred to, that the basis applicable to property acquired under a power of appointment is the value at the time of acquisition. The powers here were exercised by will. Wills speak as of the date of the death of the testator, so that in each case the date of the death was the date of acquisition. See *Brewster* v. *Gage*, 280 U. S. 327. Hence the basis of the one-third interest acquired by Elizabeth Patterson as appointee of Kate LaMontagne was the value at the date of death of the latter, August 1, 1917; the basis of the one-twelfth interest acquired by Mary Winslow as appointee of Harriet Winslow was the value at the date of death of the latter, June 27, 1923. These are the dates used by the respondent in determining the bases and we approve them.

The Patterson tract, which contained 81.76 acres, more or less, is located in the northeast section of Washington, District of Columbia. It is bounded on the north and northeast by New York Avenue, on the east by the grounds of Gallaudet College, an institution for the education and training of the deaf and dumb, on the south by Florida Avenue, and on the west by the main line tracks of the Baltimore & Ohio Railroad and the Pennsylvania Railroad and freight yards and switching tracks of the Baltimore & Ohio. New York Avenue, the northern and northeastern boundary, had not been opened in 1913, and was not opened until several years thereafter, though the necessary ground for that thoroughfare had been condemned and condemnation proceedings were started as early as 1909. The only access to the tract in 1913, and until New York Avenue was opened, was by way of Florida Avenue, on which it fronted for approximately 1,500 feet. In all other respects the accessibility and boundaries of the tract were the same at any date which may be important in these proceedings.

Until 1926, at least, the tract was not subdivided and, except for an old house, which, because of its antiquity and condition of disrepair appears to have been of little or no value, it was wholly undeveloped. The half to the northeast was quite hilly, rough and timbered, and it was taken over by the local government in 1928, through condemnation proceedings, for park purposes. Much grading of the tract was necessary for any development. Except for a few days each year, when it was used for circuses, the tract had not been put to

---

[3](4) GIFT OR TRANSFER IN TRUST BEFORE JANUARY 1, 1921.—If the property was acquired by gift or transfer in trust on or before December 31, 1920, the basis shall be the fair market value of such property at the time of such acquisition. *The provisions of this paragraph shall apply to the acquisition of such property interests as are specified in section 402(c) of the Revenue Act of 1921, or in sections 303(f) of the Revenue Act of 1924 or the Revenue Act of 1926 (relating to property passing under power of appointment) regardless of the time of acquisition.* [Italics supplied.]

any remunerative use until taken over by the Federal Government in 1917 for temporary use as a military camp.

The potential uses for the tract in 1913 were industrial, second commercial, retail, low rental apartments, and low priced row houses. About 25 percent of the tract was ideally located for industrial purposes. While available industrial sites were less numerous then than today, there was no great demand for ground for industries. Washington is not an industrial city, and such industries as may be located therein are, generally speaking, only those necessary to the needs of the community. After 1913 there was a gradual change in the value of the property, from the standpoint of its potential use, until in 1920 it was zoned about 90 percent residential and the balance commercial and industrial. These zoning restrictions tended to lessen the value of the tract as a whole, because industrial development brought more lucrative returns than any other character of land development. At the present time, the development is largely industrial, second commercial, and retail, while the half acquired by the Government for park purposes is as yet undeveloped.

There were no sales of comparable properties in the immediate vicinity on or about any of the dates important here. There were a large number of sales in the general vicinity over the period 1901 to 1925, but all of these involved small parcels, some only residential lots, from subdivided and improved lands. These sales ranged in price from 35 cents to $5 per square foot, with a preponderance in both number and area at from 85 cents to about $1.50 per square foot. There was little or no change in property values in the vicinity of the tract between 1913 and 1917; but from 1918 to 1924 there was an increase of about 40 percent. In 1926, when the values were at the peak, the owners rejected an offer of $1,750,000 for the whole tract; the offer was on the basis of part cash and the balance extended deferred payments. Another offer in the same year, of $1,500,000, with a small initial payment and extended deferred payments, plus 50 percent of the profits realized from development, was likewise rejected. After 1926 there was some dropping off in values in the vicinity of the tract. The assessed value of the property in 1914 was $286,160.

One expert witness for petitioners expressed the opinion that the fair market values of the tract were $1,750,000 in 1913, $1,925,000 in 1917, and $2,406,250 in 1923 and 1924. Another placed those values at $1,481,232 in 1913 and 1917, and $1,965,708 in 1923 and 1924. Expert witnesses for the respondent fixed the values at from $367,620 to $396,270 in 1913 and 1917, and 35 to 50 percent increase over 1917 in 1923 and 1924. On three points the expert witnesses are practically unanimous—there was little or no change in the value of the

tract between 1913 and 1917; the value was the same in 1923 and 1924; and there was an increase in value between 1918 and 1924 of approximately 40 percent. Beyond that the experts for the two sides are, figuratively speaking, as far apart as the poles.

We have carefully scrutinized the entire record with a view to ascertaining the facts in existence or in contemplation on the basic dates and from them endeavoring reasonably to predict those to come, to determine what a seller, willing but under no compulsion to sell, and a buyer, willing but under no compulsion to buy, would in their fairly mercenary interests have been most likely to agree upon as a fair price for the property in question. As a result of that study, we conclude and make the following findings of fact:

The Patterson tract had a fair market value of $600,000 as of March 1, 1913, and August 1, 1917. The same tract had a fair market value of $840,000 as of June 27, 1923, and November 8, 1924.

*Decision will be entered under Rule 50.*