THE ROLLESTONE CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE ROLLESTONE INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE FREELAND PROCESS COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE MIDWEST INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE SOUTHERN INVESTMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE SOUTHWESTERN DEVELOPMENT COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 44576, 44577, 44578, 50216, 50217, 50218, 50219, 50220, and 50221.

Promulgated November 8, 1938.

Thomas D. Lyons, Esq., and T. C. Hart, Esq., for the petitioners.
Hartford Allen, Esq., for the respondent.

1100

OPINION.

MURDOCK: Ordinary dividends are not taxable to corporations, since they are deductible in computing net taxable income, but distributions made in partial or complete liquidation, to the extent that they exceed the corporation's basis for gain on the stock, are taxable when received by corporations, since they are not deductible. Secs. 234 (a) (6) (A), 201 (a), (c), (d), and (g), Revenue Act of 1924, and corresponding sections of the Revenue Act of 1926. The principal question here is whether the distributions made by Continental to its stockholders, the Rollestone Corporation, Rollestone Investment Co., and Freeland Process Co., in 1924, 1925, and 1926 were ordinary dividends or whether they were amounts distributed in complete or partial liquidation of Continental. That question is not *res adjudicata*. It was not decided in the case cited by the petitioners.[1] Continental disposed of the principal part of its assets on February 8, 1922, under its agreements with Transcontinental. Practically all of its remaining assets were sold to Roland Oil Co. on March 11, 1922. Thereafter, Continental was merely receiving the payments under the aforesaid contracts. It had no income during the period here in controversy from any other operations. It did not engage in any drilling operations during that period. It received from Transcontinental during the period from 1922 to 1926, inclusive, $3,962,545.61, and distributed to its stockholders during that period $3,588,322.45. The stockholders, on January 18, 1922, had resolved that the corporation should be liquidated as speedily as possible and the assets distributed to the stockholders. Everything that it did thereafter during the period here in controversy was consistent with this resolution to liquidate. Continental, in its petition to the Board and on its income tax returns, alleged that it was in the process of liquidation and was not engaged in producing or selling oil, but was merely acting as a receiving and disbursing agent for the funds realized from the sale. Continental furnished an affidavit to the Commissioner to the same effect. The evidence clearly establishes the fact that Continental was in the

---

[1] *Alexander* v. *Continental Petroleum Co.*, 63 Fed. (2d) 927.

process of liquidation during 1924, 1925, and 1926, and that the distributions here in question were amounts distributed in partial or complete liquidation of the corporation within the meaning of those terms as defined in the Revenue Acts of 1924 and 1926.

It should be noted that "amounts distributed in partial liquidation" is defined as meaning a distribution by a corporation in complete cancellation or redemption of part of its stock, or one of a series of distributions in complete cancellation or redemption of all or a portion of its stock. Each of the distributions here in question seems to have been one of a series of distributions intended to be in complete cancellation or redemption of all of the stock of the corporation when the series was completed. The following quotation from *Fred T. Wood*, 27 B. T. A. 162, is in point:

 \* \* \* Liquidation has been defined as the operation of winding up the affairs of a corporation by realizing upon its assets, paying its debts and appropriating the amount of its profit or loss. *W. E. Guild*, 19 B. T. A. 1186, and cases there cited. It differs from the normal operation of the corporation for current profit in that it ordinarily results in the winding up of the corporation's affairs. There must be a manifest intention to liquidate, a continuing purpose to terminate its affairs and dissolve the corporation, and its activities must be directed and confined thereto. It contemplates an impairment of capital or a retirement of outstanding stock, though a distribution, if one of a series of distributions in liquidation, may be a liquidating dividend even if it, of itself, does not impair capital. Liquidation can not be brought about by mere declaration, and the question of whether a corporation is in liquidation is therefore one of fact: See *W. E. Guild, supra; James P. Gossett*, 22 B. T. A. 1279, affd., 60 Fed. (2d) 484; *Martha Briggs Phelps*, 20 B. T. A. 866; affd., 54 Fed. (2d) 289; *E. G. Perry*, 9 B. T. A. 796; *Milton Tootle, Jr.*, 20 B. T. A. 892.

It does not make any difference that a part of the distributions made in the taxable years might be deemed to have been from earnings and profits. *Hellmich* v. *Hellman*, 276 U. S. 233; *Gossett* v. *Commissioner*, 59 Fed. (2d) 365; *Holmby Corporation* v. *Commissioner*, 83 Fed. (2d) 548. Nor does the fact that the stock continued to be held by the stockholders without formal dissolution, prevent the distributions from being in liquidation. *Frelmort Realty Corporation*, 29 B. T. A. 181. The drilling operations engaged in in 1930 and 1933 were insignificant and unimportant, since even then there was no intent to maintain the corporation as a going concern. *Holmby Corporation* v. *Commissioner, supra.* Neither is it important that Continental was allowed depletion on the interest in the leases until the terms of the contract were fulfilled in 1929.

The next question is whether the basis of these petitioners for gain or loss on the Continental shares was reduced by the distributions in 1922 and 1923. The Commissioner does not concede that the effect of those distributions is determined by the Revenue Act of 1921. However, he does not make any argument or cite any authorities to

the effect that the Revenue Act of 1921 is not controlling. That act differed materially from subsequent acts, since it contained no provision for reducing the basis by distributions made in partial or complete liquidation. Distributions under that act were presumed to be from earnings, if earnings were available, in cases like this, and distributions from accumulated earnings were taxable only as dividends. The Commissioner states in his brief that he can not tell whether or not Continental had accumulated earnings sufficient to pay these distributions of 1922 and 1923, but the evidence shows to our satisfaction that earnings were available. There is no provision in the Revenue Acts of 1924 and 1926 making the provisions of those acts relating to the reduction of basis by distributions in liquidation retroactive so as to cover distributions made prior to the enactment of those acts. Therefore, we conclude that the distributions of 1922 and 1923 did not serve to reduce the petitioners' bases for gain or loss on the Continental shares. Cf. *Elizabeth P. Patterson*, 33 B. T. A. 57; *Lewis D. Newman*, 9 B. T. A. 158, 161.

Another issue for decision is the basis for gain which the Continental shares had in the hands of the three petitioners. They acquired their Continental shares on January 10, 1922. Section 204 of the Revenue Acts of 1924 and 1926 provide that the basis for determining gain or loss from the sale of property acquired after February 28, 1913, shall be the cost of such property, with certain exceptions. One of the exceptions is that "if the property (other than stock or securities in a corporation a party to a reorganization) was acquired after December 31, 1920, by a corporation by the issuance of its stock or securities in connection with a transaction described in paragraph (4) of subdivision (b) of section 203 * * *, then the basis shall be the same as it would be in the hands of the transferor," where no gain or loss was recognized to the transferor under the law applicable to the year in which the transfer was made. Sec. 204 (a) (8). These three petitioners acquired their Continental shares by the issuance of their stock in connection with a transaction described in paragraph 4 of subdivision (b) of section 203. The latter section provides that no gain or loss shall be recognized if property is transferred to a corporation by one or more persons solely in exchange for the stock in such corporation and immediately after the exchange such person or persons are in control of the corporation. No gain or loss from those transfers was recognized under the Revenue Act of 1921, which was the law applicable to the year in which the transfers were made. See section 202 (c) (3) (A) of the Revenue Act of 1921. The provisions of the Revenue Acts of 1924 and 1926 above referred to apply to all such transfers made after December 31, 1920, by the express language of those provisions. The transactions whereby E. H. Rollestone and C. L. Freeland

transferred their Continental shares to the Rollestone Investment Co. and the Freeland Process Co. were no part of any plan of reorganization and the Continental stock was not, as to these two petitioners, stock of a corporation a party to a reorganization. Consequently, the bases of the Continental stock in the hands of Rollestone Investment Co. and Freeland Process Co. are the same as the bases for gain or loss which the Continental shares had in the hands of E. H. Rollestone and C. L. Freeland, or $2.25 for each Continental share.

The situation in regard to Rollestone Corporation needs further consideration. A. A. Rollestone owned and transferred to the Rollestone Corporation 80,554 shares of Continental stock. That was more than 50 percent of the total outstanding stock of Continental at that time. There was no other kind of stock outstanding at that time. Thus the transfer from A. A. Rollestone to the Rollestone Corporation amounted not only to an exchange within section 203 (b) (4), but also to a reorganization within the definition of that term as contained in section 203 (h) (1) (A) of the Revenue Acts of 1924 and 1926. Thus, the Continental shares transferred by A. A. Rollestone to the Rollestone Corporation, being stock of a corporation a party to a reorganization (section 203 (h) (2) of the Revenue Acts of 1924 and 1926), are expressly excluded from the exception made in 204 (a) (8) and are subject to the general rule of (a), unless some other exception applies.[2] Such shares are specifically excluded from paragraphs (6) and (7). The other excepting paragraphs of section 204 (a) obviously are likewise inapplicable. It follows that the basis of the Rollestone Corporation for gain or loss on the Continental shares is the cost of the shares to the Rollestone Corporation, as provided in the general rule of section 204 (a). The Rollestone Corporation acquired the Continental shares by the issuance of all of its own stock then outstanding, and the cost of the Continental shares was the value of the Rollestone stock. That value, in turn, was the same as the total value of the Continental stock acquired, or 80,554 times $25. *Ida I. McKinney*, 32 B. T. A. 450, 456; *E. F. Simms*, 28 B. T. A. 988; *Reliance Investment Co.*, 22 B. T. A. 1287; *George A. Ricker*, 10 B. T. A. 11; *William Ziegler, Jr.*, 1 B. T. A. 186; *Manufacturers Paper Co.* v. *Commissioner*, 89 Fed. (2d) 684.

The issue relating to the deductibility of the alleged losses of the subsidiaries, the A. A. Rollestone Co. and Puritan Mining Co., in

[2] The excluding parenthetical clause "(other than stock or securities in a corporation a party to the reorganization)" of sections 204 (a) (7) and (8) of the Revenue Acts of 1924 and 1926 were eliminated in the Revenue Act of 1928 in order to prevent possible evasion. See sections 113 (a) (7) and (8) of the Revenue Act of 1928 and Finance Committee Report, Report No. 9870, 70 Cong., 1st sess., p. 27. This was new legislation and was not retroactive. *Stires Corporation*, 28 B. T. A. 1; *Holmby Corporation*, 28 B. T. A. 1092, 1102; *John R. Thompson Securities Corporation*, 33 B. T. A. 1011; G. C. M. 7285, C. B. IX–1, 181.

1925 and 1926 was not clearly presented. The amount of the losses claimed on the returns, as well as the amount disallowed by the Commissioner, does not appear. No amount is mentioned in the pleadings. The contention is made in the petitioner's brief that the petitioners are "entitled to a deduction of several hundreds of thousands of dollars for dry hole expenses." The evidence does not show how much was spent, how much might have been expense, how much capital, or the amount of any loss deductible in either year. The Board can not make any approximation for either year. The evidence fails to show that the Commissioner erred.

*Decisions will be entered under Rule 50.*