T.C. Summary Opinion 2001-49

UNITED STATES TAX COURT

DON E. KRAMER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12198-99S.                    Filed April 4, 2001.

<u>George Edward Marifian</u> and <u>Mary E. Lopinot</u>, for petitioner.

<u>James A. Kutten</u>, for respondent.


GOLDBERG, <u>Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal Revenue Code in effect for the year in issue.

Respondent determined a deficiency in petitioner's Federal

income tax in the amount of $17,223 and an accuracy-related penalty under section 6662(a) of $3,445 for the 1995 tax year.

The issues for decision are: (1) Whether petitioner is entitled to deduct on his individual income tax return losses incurred in the operation of a restaurant or if such losses are deductible by BERM Hospitality Services, Inc., a corporation in which petitioner was the sole shareholder; and (2) whether petitioner is liable for an accuracy-related penalty under section 6662(a) for the year in issue. Issues relating to capital losses, self-employment tax, itemized deductions, and earned income credit are computational and depend upon the holding in this case.

Background

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing the petition, petitioner resided in Marion, Illinois.

In August 1994, petitioner and Rich Maker (Mr. Maker) formed BERM Hospitality Services, Inc. (BERM), d.b.a. D.K.'s Steak & Seafood House, as a corporation under Illinois law. Petitioner and Mr. Maker were the initial shareholders of BERM, each owning 50 percent of the stock. BERM conducted business operating a restaurant, a cocktail bar and lounge, and banquet facilities at the Holiday Inn Motel (Holiday Inn), Mt. Vernon, Illinois,

beginning in August 1994.

Petitioner hired a corporate service company to prepare and file the incorporation documents on behalf of petitioner and Mr. Maker. The articles of incorporation of BERM were filed with the Illinois secretary of state on July 21, 1994, along with an application to adopt an assumed corporate name, D.K.'s Steak & Seafood House, on July 29, 1994. BERM also filed an application for an employer identification number (EIN) with respondent. The Illinois Department of Revenue issued a certificate registering BERM under the Illinois Use Tax Act, Service Occupation Tax Act, and Service Use Tax Act.

Petitioner negotiated BERM's lease with F.M. (Pat) Sullivan and Dorothy Jane Sullivan, as Trustee of the Dorothy Sullivan Trust, dated December 20, 1990, to operate the restaurant, cocktail bar and lounge, and banquet facilities at the Holiday Inn. BERM purchased commercial general liability insurance, excess liability insurance, and liquor liability insurance for the period from August 1, 1994, until August 1, 1995; however, the insurance agreements were canceled at the end of April 1995.

Initially, petitioner participated minimally in the daily operations of D.K.'s Steak & Seafood House. Petitioner considered himself the investor or "financial supporter" and Mr. Maker the "operating expert", handling the day-to-day operation of the restaurant. Petitioner was also in charge of securing

other investors; however, he was unsuccessful. Petitioner's initial investment in BERM was approximately $50,000.

Shortly after the restaurant's opening in August 1994, petitioner and Mr. Maker had disagreements over Mr. Maker's management practices. At that time, petitioner was winding down his law practice in Marion, Illinois, about 45 miles away, and was not involved with BERM full time. Mr. Maker made numerous requests to petitioner for additional money, and, after further inquiry, petitioner found that Mr. Maker "was spending money like there was no tomorrow." Petitioner also noticed a high rate of employee turnover. Because of disagreements in management, petitioner asked Mr. Maker to take a few weeks off while petitioner decided whether or not to continue with the venture.

In December 1994, petitioner and Mr. Maker agreed that Mr. Maker would no longer have any involvement with BERM. To this end, on December 12, 1994, Mr. Maker sold his stock in BERM to petitioner for $5,000, leaving petitioner as the sole shareholder of BERM. Although an agreement memorializing this sale was fully executed by the parties, there are no corporate minutes or resolutions by BERM with respect to distributions to any shareholders. In fact, BERM did not maintain a corporate minute book. After petitioner's initial $50,000 investment in BERM, he continued to use his own money or money lent to him by friends to

maintain BERM's operations.[1]

Petitioner filed, on December 27, 1994, an Illinois Business Registration with the Illinois Department of Revenue for the entity Kramer Hospitality Services (Kramer Hospitality), d.b.a. D.K.'s Steakhouse. Also on December 27, 1994, petitioner drove to Springfield to file an application for a new EIN, Form SS-4, for the entity Kramer Hospitality. On December 29, 1994, the Illinois Department of Revenue issued a certificate registering Kramer Hospitality under the Illinois Use Tax Act, Service Occupation Tax Act, and Service Use Tax Act. The record does not indicate that Illinois sales taxes were reported or remitted by petitioner or Kramer Hospitality.

During all times relevant, Kramer Hospitality did not have a bank account; rather, throughout 1995 petitioner continued to use BERM's corporate bank account, in the name of D.K.'s Steak & Seafood House, to deposit receipts and pay creditors. Kramer Hospitality did not purchase liability insurance during 1995. BERM's commercial liability insurance agreements were maintained until April 1995, when BERM ceased operations. Also, Kramer Hospitality did not obtain a lease to operate the restaurant, cocktail bar and lounge, and banquet facilities at the Holiday Inn, nor did BERM execute a written agreement assigning its

---

[1] The record is unclear as to whether these amounts were loans to the corporation or additional contributions to capital.

interest in the written lease to Kramer Hospitality, as required under section 6.1 of the lease agreement.[2]

For the taxable year ending December 31, 1994, BERM filed a Form 1120, U.S. Corporation Income Tax Return, and a Form 1120X, Amended U.S. Corporation Income Tax Return. The 1994 tax return was filed on September 18, 1995, and the boxes were checked for initial return and final return. BERM did not file Form 966, Corporate Dissolution or Liquidation, with respondent, as required under section 6043(a).[3] BERM also failed to file articles of corporate dissolution with the Illinois secretary of

---

[2] Section 6.1. of the lease agreement, entitled Assignment and Subleasing, states as follows: "This Lease may be assigned in whole or in part, and the Project may be subleased in whole or in part, by the Lessee only with the written consent of the Lessor".

[3] SEC. 6043. LIQUIDATING, ETC., TRANSACTIONS.

(a) Corporate Liquidating, Etc., Transactions.-- Every corporation shall--

(1) Within 30 days after the adoption by the corporation of a resolution or plan for the dissolution of the corporation or for the liquidation of the whole or any part of its capital stock, make a return setting forth the terms of such resolution or plan and such other information as the Secretary shall by forms or regulations prescribe; and

(2) When required by the Secretary, make a return regarding its distributions in liquidation, stating the name and address of, the number and class of shares owned by, and the amount paid to, each shareholder, or, if the distribution is in property other than money, the fair market value (as of the date the distribution is made) of the property distributed to each shareholder.

state.  On December 1, 1995, BERM was administratively dissolved, by operation of law, for the failure to file the annual report due July 1, 1995, and pay an annual franchise tax.  See 805 Ill. Comp. Stat. 5/12.35 (West 1991); 805 Ill. Comp. Stat. 5/12.40 (West 1986).

Petitioner reported the restaurant's operating losses of $54,819 on his individual Schedule C, Profit or Loss From Business, and abandonment losses[4] of $44,184 on Form 4797, Sales of Business Property, for taxable year 1995.

In a notice of deficiency respondent determined that petitioner was not entitled to deduct the business operating and abandonment losses, resulting in a tax liability of $17,223. Respondent also determined a penalty of $3,445 pursuant to section 6662(a).  However, in the notice of deficiency respondent determined petitioner incurred a capital loss of $141,358 from his investment in BERM and allowed petitioner a deduction therefor of $3,000 pursuant to sections 165(g) and 1211(b).

Discussion

The first issue for decision is whether petitioner operated the restaurant business at the Holiday Inn as a sole proprietorship or a corporation during 1995.  Asked differently,

---

[4] Petitioner's reported abandonment losses are with respect to equipment and leasehold improvements that were abandoned when the restaurant ceased doing business in April 1995.

did BERM distribute its assets to petitioner in a complete liquidation during 1994 so that from that date forward, petitioner operated the business as a sole proprietorship?

Petitioner contends that BERM had completed a de facto liquidation of its assets to him, as the sole shareholder, in December 1994. Petitioner further contends that upon liquidation he held BERM's former assets as a sole proprietorship and continued to run the restaurant located at the Holiday Inn. Thus, petitioner is entitled to claim the losses on his Schedule C for the taxable year 1995.

Respondent contends that BERM was not dissolved until the State of Illinois administratively dissolved it in July 1995 for failure to file its annual filings and pay an annual franchise tax. Respondent further contends that petitioner failed to show that a liquidating distribution occurred in 1994; thus, BERM was the true owner of the assets during 1995 and petitioner is not entitled to personally deduct the operational and abandonment losses.

Whether a corporation has liquidated is a question of fact. See Wood v. Commissioner, 27 B.T.A. 162, 167 (1932); Murphy v. Commissioner, T.C. Memo. 1996-59. This Court has applied a three-pronged test in making a factual determination that a de facto liquidation had occurred for Federal tax purposes: (1) Whether there is a manifest intention to liquidate; (2) whether

there is a continuing purpose to terminate corporate affairs and dissolve the corporation; and (3) whether the corporation's activities are directed and confined to that purpose. See Estate of Maguire v. Commissioner, 50 T.C. 130, 140 (1968).

Although the term "complete liquidation" is not defined in the Code or the regulations to section 331, we have noted in Olmsted v. Commissioner, T.C. Memo. 1984-381, that the regulations under section 332 offer a definition of "complete liquidation" that applies equally to section 331:

> A status of liquidation exists when the corporation ceases to be a going concern and its activities are merely for the purpose of winding up its affairs, paying its debts and distributing any remaining balance to its shareholders. A liquidation may be completed prior to the actual dissolution of the liquidating corporation. However, legal dissolution of the corporation is not required.*** [Sec. 1.332-2(c), Income Tax Regs.]

Under Illinois law, a corporation is prohibited from making a distribution if, after giving it effect, the corporation would be insolvent. See 805 Ill. Comp. Stat. 5/9.10(c)(1) (West 1984). A corporation is insolvent when it is unable to pay its debts as they become due in the usual course of its business. See id. 5/1.80(m).

Petitioner relies on Rendina v. Commissioner, T.C. Memo. 1996-392, to support his contention that BERM had de facto liquidated during December 1994 for tax purposes. However, after reviewing Rendina, we find that it is distinguishable. In

Rendina, the Court found that the intent to liquidate was

> apparent from the sales of WSAI's assets, its cessation of business, and the agreement of petitioner and Ackerman that WSAI would distribute the last two condominium units to petitioner, in consideration of petitioner's assumption of the corporation's liabilities to its lenders and his recovery of his investment out of the balance.  With that final distribution, WSAI held title to no further assets of any substantial consequence.***

Unlike the facts in Rendina, the record does not clearly show an intent to liquidate.  There is no evidence of a written or oral agreement to liquidate BERM after Mr. Maker sold his shares in the corporation; no management agreement showing petitioner's obligation to indemnify the corporation of any loss at the end of the year; no partnership agreement showing a new entity to carry on the business of BERM; no books and records showing daily accounts or value of assets and liabilities; and no canceled checks or loan agreements establishing the amounts of loans petitioner personally made to BERM or any other entity.

In fact, there is no evidence that BERM ceased doing business at the end of 1994.  On the contrary, petitioner continued to enjoy the benefits of BERM's corporate form throughout 1995.  Particularly, petitioner continued to use BERM's checking account to deposit receipts, pay expenses and maintain the necessary cash-flow for the business.  Petitioner also enjoyed the benefits of the insurance contracts and lease

agreement entered into by BERM.  There was no attempt to renegotiate these contracts on behalf of Kramer Hospitality.[5] See <u>Haley Bros. Constr. Corp. v. Commissioner</u>, 87 T.C. 498, 515-516 (1986).

Petitioner has failed to show that a liquidating distribution of BERM's assets occurred in 1994.  Petitioner has not offered any corroborating evidence, besides his testimony, to establish that any distribution, liquidating or nonliquidating, occurred in 1994.  It is well settled that we are not required to accept a taxpayer's self-serving testimony in the absence of corroborating evidence.  See <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 212 (1992).

Assuming arguendo, that petitioner did attempt to distribute BERM's assets to himself, Illinois law prohibits such a distribution if the corporation is insolvent.  See 805 Ill. Comp. Stat. 5/9.10(c)(1).  After reviewing BERM's bank accounts, corporate tax returns for 1994, Forms 1120 and 1120X, and petitioner's testimony, we find that BERM could not make a liquidating distribution, as petitioner suggests, because it was insolvent at that time.[6]

---

[5]     Petitioner testified that he conferred with his agent about the insurance contracts and it was "kind of a calculated decision" to maintain BERM's insurance due to the insufficiency of his personal cash flow.

[6]     According to BERM's Form 1120, U.S. Corporation Income
(continued...)

On the basis of the complete record, we hold that BERM did not distribute its assets to petitioner during 1994; therefore, petitioner is not entitled to deduct the operational or abandonment losses claimed on his Schedule C. Accordingly, respondent is sustained on this issue.

Section 6662(a)

The last issue for decision is whether petitioner is liable for an accuracy-related penalty pursuant to section 6662(a). Section 6662(a) imposes a penalty of 20 percent of the portion of the underpayment which is attributable to negligence or disregard of rules or regulations. See sec. 6662(b)(1). Negligence is the "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. 43 T.C.

_____

[6](...continued)
Tax Return, BERM was insolvent at the close of 1994. However, BERM's Form 1120X, Amended U.S. Corporation Income Tax Return, reports an adjustment of $102,533, as "Management Fees Received" in 1994, thus transforming BERM into a solvent corporation at the close of 1994. At trial, petitioner testified that he did not invest $102,533, but rather, he relieved the corporation of $102,533 in loans he had previously made to the corporation in 1994. The record does not indicate any evidence of the amount of loans petitioner made to BERM other than petitioner's testimony and the amended return. Also, the record contains no management agreements which petitioner testified required him to indemnify the corporation for any loss at the end of the year. On the basis of the above, we do not accept petitioner's self-serving testimony in the absence of corroborating evidence. See Niedringhaus v. Commissioner, 99 T.C. 202, 212 (1992).

168 (1964) and T.C. Memo. 1964-299). Negligence also includes any failure by the taxpayer to keep adequate books and records or to substantiate items properly. See sec. 1.6662-3(b)(1), Income Tax Regs. The term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c). No penalty shall be imposed if it is shown that there was reasonable cause for the underpayment and the taxpayer acted in good faith with respect to the underpayment. See sec. 6664(c). The determination of whether a taxpayer acted with reasonable cause and good faith within the meaning of section 6662(c) is made case-by-case, taking into account all the pertinent facts and circumstances. See sec. 1.6664-4(b)(1), Income Tax Regs.

We find petitioner's testimony conflicting,[7] and without corroborating evidence, self-serving. See Niedringhaus v. Commissioner, supra at 212. At trial, petitioner failed to establish that he acted in good faith with respect to the claimed losses. Petitioner, a practicing lawyer during the year in issue, failed to make inquiry and obtain advice as to the necessary steps to dissolve a corporate entity. He also failed

---

[7] For instance, although petitioner testified that he obtained a new sales tax number for Kramer Hospitality Services as a sole proprietorship, the record shows that all relevant documents (i.e., Illinois Business Registration, Form SS-4, application for new EIN, Illinois Department of Revenue Sale and Use Tax Return, and Payroll Transfers New Subscriber Information Form) indicate that Kramer Hospitality was formed as a partnership, rather than a sole proprietorship.

to maintain adequate books and records and to act with ordinary business care and prudence in complying with the Federal income tax requirements.

On the basis of the entire record, we find that petitioner was negligent and hold that petitioner is liable for an accuracy-related penalty under section 6662(a) for the 1995 tax year.

We have considered all arguments made by the parties, and, to the extent not discussed above, conclude they are irrelevant or without merit.

Reviewed and adopted as the report of the Small Tax Case Division.

<u>Decision will be entered</u>

<u>for respondent</u>.